MAX M. AARON, Respondent, v. G. S. HOLMES, Appellant.

No. 1904.    Decided November 14, 1908.    Petition for Rehearing Denied January 28, 1909 (99 Pac. 450).

1. APPEAL AND ERROR—PROCEEDINGS BELOW—CHANGE OF GROUNDS OF OBJECTION. Where plaintiff admitted in writing that the default was excusable, and consented that it be set aside, provided the court held defendant's answer a good defense to the action, and the ruling denying a motion to set aside the default was

35 Utah—4

based solely on the latter ground, plaintiff cannot on appeal withdraw his admission, and assert that the default was not excusable. (Page 55.)

2. APPEAL AND ERROR—PRESENTATION OF GROUNDS—OBJECTION—SUFFICIENCY OF DECLARATION. Objections that a complaint does not state a cause of action may be urged for the first time on appeal. (Page 55.)

3. APPEAL AND ERROR—DISCRETION OF TRIAL COURT—SETTING ASIDE DEFAULT. Whether a default be set aside and the defaulting party allowed to plead to the merits is within the sound discretion of the trial court, the exercise of which, in absence of abuse, will not be reviewed on appeal. (Page 55.)

4. APPEAL AND ERROR—REVIEW—THEORY BELOW. The theory of the case, assumed and acted upon by the parties below, must be adhered to on appeal.[1] (Page 56.)

5. LANDLORD AND TENANT—ACTION FOR EVICTION—GENERAL DENIAL—SCOPE. In an action for eviction, where defendant alleged that plaintiff surrendered the premises under an agreement that another should lease them, and that the goods set out of the premises were goods left there by plaintiff, and denied every allegation of the complaint not admitted or explained, the general denial at least put in issue the amount of the damages. (Page 56.)

6. LANDLORD AND TENANT—ACTION FOR EVICTION—DEFENSES—SURRENDER BY TENANT. Where a tenant requested permission to surrender the premises, and the landlord leased the premises to another in the tenant's presence and at his request, and the tenant paid the rent then due and surrendered the premises, and the new tenant was put into possession pursuant to the agreement, the tenant could not thereafter sue for eviction because some of his goods left in the building were set out. (Page 57.)

7. FRAUDS, STATUTE OF—INTEREST IN LAND—SURRENDER OF LEASE—PAROL CONTRACT. While no interest in land can be surrendered by an executory parol agreement, an executed parol contract for the surrender of a lease is valid, so that a parol contract whereby a tenant surrendered leased premises and another was put in possession was not void under the statute of frauds.[2] (Page 57.)

---

[1] Lebcher v. Lambert, 23 Utah 1, 63 Pac. 628.

[2] Cutwright v. Union Savings & Inv. Co., 33 Utah 486, 94 Pac. 984.

ON REHEARING.

8. LANDLORD AND TENANT—EVICTION—DEFENSES—PLEADING—SUFFI-
CIENCY OF ALLEGATIONS. In an action for eviction, allegations
of the answer that the tenant requested permission to surrender
the premises, that the landlord leased them to another in the
tenant's presence and at his request, and that the new tenant
thereafter took possession under the agreement, were sufficient,
as against a general denial, to admit evidence of an executed con-
tract by the tenant to surrender the premises. (Page 59.)

APPEAL from District Court, Third District. *Hon. T.
D. Lewis,* Judge.

Action by Max M. Aaron against G. S. Holmes. From
an order denying defendant's motion to open a default judg-
ment for plaintiff, defendant appealed.

REVERSED with instructions to permit defendant to an-
swer to the merits.

*Samuel Russell* for respondent.

*Messrs. Dey & Hoppaugh* for appellants.

STATEMENT OF FACTS.

This is an appeal from a judgment entered by default in
the district court of Salt Lake county against G. S. Holmes,
appellant. The important question presented by the appeal
relates to the ruling of the trial court in denying an applica-
tion made by Holmes to vacate the judgment and set aside
the default and permit him to file an answer, which he pre-
sented in connection with his motion to vacate the judg-
ment. The proceedings in the trial court, so far as materi-
al to the questions involved, are as follows: The com-
plaint in substance alleged, (1) that on the 1st day of Jan-
uary, 1907, plaintiff was possessed of a leasehold estate to
a certain storeroom at No. 112 East Second South street,
in Salt Lake City, which estate was for the term of two
years, commencing May 15, 1906, and terminating May
15, 1908; (2) that "said estate was created by a certain

indenture and deed made by the said G. S. Holmes, and duly executed by the parties hereto upon said 15th day of May, 1906." [Then follows an allegation describing the business carried on by plaintiff on said premises]; (3) that on the 1st day of January, 1907, the defendant by "his servants and agents . . . with force and violence wrongfully and maliciously ousted, evicted, and dispossessed the said plaintiff of said premises, and removed therefrom the furniture of said plaintiff used in said establishment, together with the stocks of merchandise and other goods and chattels of this plaintiff, and deposited the same upon the public highway, and said defendant thereupon subjected the said premises to his own use and benefit, and continues . . . by his servants and tenants to possess and occupy the same;" (4) that plaintiff was to pay defendant as rent for said premises the sum of $35 per month; (5) that plaintiff has been unable to find another storeroom of like kind suitable for the carrying on of his business for less than $60 per month; (6) that the said eviction was wanton and malicious, and was intended to, and did, injure plaintiff in his business, to his damage in the sum of $500.

The complaint was filed January 10, 1907, and summons was served January 11, 1907. On February 5, 1907, default was entered, and on February 15th an order was made reciting the entry of the default, and directing that judgment for $477.50 be entered in favor of plaintiff. Three days thereafter (February 18th) defendant's attorney filed a motion, supported by affidavits and an answer to the merits, duly verified and attached to the affidavits, to vacate the judgment and set aside the default. One of the affidavits was made by A. L. Hoppaugh, one of the defendant's attorneys, and recited that he was a member of the firm of Dey & Hoppaugh; that said firm was employed by defendant in said cause; that "within the time allowed for answering the complaint herein the answer herewith tendered was prepared; . . . that the answer after being verified was placed in the hands of the managing clerk of the firm

of Dey & Hoppaugh, with instructions to cause the same to be at once served upon the attorney for plaintiff; that the managing clerk of said office handed the same to Clarence Cramer, another clerk in said office, and that said Clarence Cramer thereafter reported that said answer had been served and filed; that through the mistake of the said Clarence Cramer the answer in this case was confused with the answer in another case served upon the same day, and that said clerk Clarence Cramer failed to serve or file the answer herein, but left the same in the office filing case, where it remained until the 17th day of February, 1907; that on February 17, 1907 (two days after the default and judgment were entered), this affiant for the first time discovered that said answer had not been filed, and that judgment by default had been entered herein." Each of the two clerks in Dey & Hoppaugh's office made an affidavit in which substantially the same facts were alleged as were contained in Hoppaugh's affidavit. No counter affidavits were filed or presented; but the attorney for plaintiff made a statement in writing, conceding that the default occurred "through mistake, inadvertence, and excusable neglect of defendant's attorneys," and consented "that said default and judgment be set aside and vacated, provided that the proposed answer of defendant be held by the court to be good and sufficient in law and to present a meritorious defense to the plaintiff's cause of action as stated in his complaint." The answer tendered by appellant in connection with his motion set forth: (1) That the lease referred to in plaintiff's (respondent's) complaint stipulated that if the rent was unpaid on the day payable, and for ten days thereafter, the lessor might re-enter without notice and terminate the tenant's estate; (2) "that on or about the 15th day of December, 1906, when the rent of $35 for said storeroom became due and owing from said plaintiff to this defendant for the month ending January 15, 1907, pursuant to the terms and conditions of said lease, said plaintiff notified this defendant that he desired to give up said leased premises on the 1st day of January, 1907,

as he had sold his property therein contained, and that thereafter, on the 22d day of December, 1906, said plaintiff called upon this defendant and again requested that said plaintiff be permitted to give up said leased premises and terminate said lease on the 1st day of January, 1907, and stated that a Mr. Cook would rent said premises from said time, and after said 1st day of January, 1907;" (3) that thereafter the defendant's agent went to Cook in accordance with plaintiff's request to terminate the lease, and at this interview, in the presence of the plaintiff, a lease was made by the defendant to Cook for said premises, commencing January 1, 1907, and the plaintiff thereupon paid the rent for the half month to January 1, 1907, only, and defendant, at plaintiff's request, released the plaintiff from the lease and from any obligation thereunder, from and after January 1, 1907; (4) that on the 2d day of January, 1907, after the surrender of the premises, and after the termination of said lease as aforesaid, the defendant let Cook, under the lease which he had given him, into possession of the premises; (5) that plaintiff had left in the storeroom some few articles of personal property, which were removed to the sidewalk and forthwith taken away by the plaintiff. And for a further answer to the complaint the defendant denied "each and every allegation, matter, and thing therein contained and not expressly admitted, qualified, or explained" in the foregoing affirmative defense.

McCARTY, C. J. (after stating the facts as above). The first question for consideration involves the right of respondent to withdraw his admission in writing that the default occurred "through the inadvertence and excusable neglect of defendant's attorneys," which admission he in this court for the first time attempts to withdraw. In his brief he says: "Any admissions as to the excusableness of the default, or, in other words, the sufficiency of the facts is an admission of law, which plaintiff may withdrew, and

which, for the purposes of determining the law upon this appeal, he does withdraw." Respondent then proceeds to discuss at considerable length the question whether appellant's default was in fact excusable. By conceding in writing that the default was excusable, respondent thereby, in effect, consented that it might be set aside and the case opened up, provided the court should hold that the answer tendered by appellant contained a meritorious defense. Having thus, by his written admission, reduced the discussion of the case before the trial court to the single proposition as to whether the answer contained a meritorious defense to plaintiff's cause of action, we think it may be fairly inferred that the court based the ruling complained of solely on that ground. Therefore the respondent ought not, at this stage of the case, be allowed to change his position. To permit him to do so would be manifestly unjust to appellant. The contention that the sufficiency of the facts set forth in the affidavit to show "excusable neglect" must be tested by the same rule that governs when a complaint is challenged on the ground that it does not state facts sufficient to constitute a cause of action, and that the question may be raised for the first time on appeal is untenable. In determining the sufficiency of a complaint when challenged on the ground that it does not state facts sufficient to constitute a cause of action, a much stricter rule is invoked than obtains in cases where, as here, a party seeks to have a default set aside on the ground of mistake or excusable neglect. In the first instance, if the complaint wholly fails to state a cause of action, objections to it on that ground may be successfully urged at any time. In the other the question whether a default and judgment should be set aside, and the party aggrieved given an opportunity to plead to the merits, is one that rests within the sound discretion of the court; and, unless it is made to appear that this discretion has been abused, the rulings of the trial court on matters of this kind will not be disturbed on appeal. The foregoing principles have so often been announced, and

so universally adhered to by the courts of last resort, that
we deem it unnecessary to cite authorities in support of them.
In this case, however, as we have pointed out, respondent
admitted in the court below that the default occurred through
the inadvertence and excusable neglect of appellant's attor-
neys, therefore the court was not called upon to determine
whether the facts recited in the affidavit were sufficient to
show excusable neglect to entitle appellant to have the de-
fault set aside and the case opened up, and hence was not
required to exercise its discretion in the matter. It is also a
well-settled rule, that a theory, assumed and acted
upon by the parties litigant in the trial court, must
be adhered to upon appeal. (*Lebcher v. Lambert,* 23
Utah 1, 63 Pac. 628; Elliott on App. Pro., sec. 490.) In
2 Cyc. 670, it is said:

> "One of the most important results of the rule that questions
> which are not raised in the court below cannot be reviewed in the
> appellate court is that a party cannot, when a cause is brought up
> for appellate review, assume an attitude inconsistent with that
> taken by him at the trial, but that such party is restricted to the
> theory on which the cause was prosecuted or defended in the court
> below. Thus, where both parties act upon a particular theory of the
> cause of action, they will not be permitted to depart therefrom when
> the case is brought up for appellate review."

Numerous cases are cited in the footnote, which illustrate
and support the doctrine. As we have pointed out, respond-
ent conceded in the lower court that appellant's default oc-
curred through "inadvertence and excusable neglect," and
the questions involved were submitted to the court upon
that theory. Therefore under all the authorities he is pre-
cluded from taking any other or different position in this
court.

The next question presented is, Did the answer tendered
by appellant in connection with his motion contain a good
defense to respondent's demand, or to any substantial
part thereof? The general denial contained in the
answer at least puts in issue the amount of damages
demanded by respondent. Besides, in his special defense

appellant alleged that the lease was made in the presence
of respondent, and at his special instance and request, and
that he then and there released appellant from his lease
on said premises, and from any obligations thereunder, and
that, in pursuance thereof, appellant put Cook into posses-
sion of the premises. Now if these claims are well founded,
they constitute a good defense to respondent's alleged cause
of action. We know of no rule of law, or principle
of equity, under which a party may recover damages
for an act or omission which he himself induced or
assented to. It is a familiar maxim that "*volenti non fit
injuria.*" That is to say, what a person assents to or induces
to be done he cannot afterwards complain of as an injury.
Respondent, however, contends that the special defense inter-
posed by appellant was insufficient because it was based upon
an alleged transaction which, even if it actually occurred,
was nothing more than an attempt, on the part of respond-
ent, to surrender an interest in land by parol, which, under
the statute of frauds, was a nullity. While it is settled law
that no interest in land can be created, transferred, or sur-
rendered by merely a parol executory agreement, it is also
equally well settled that a contract for the sale or leasing
of real estate may be rescinded by parol. "Such rescission
may be effected, not only by an express agreement, but by
any course of conduct clearly indicating a mutual assent
to the termination or abandonment of the contract." (2 War-
velle, Vendors (2 Ed.), sec. 826.) A question involving
this same principle of law was raised in the case of *Cut-
wright v. Union Savings & Inv. Co.,* 33 Utah 486, 94 Pac.
984, and this court held, in an opinion written by Mr.
Justice Frick, that an executed parol agreement to
rescind a contract for the sale of land, where the
vendee has surrendered, and the vendor has gone into
possession of the premises covered by the original contract,
is not void under the statute of frauds. The question here
involved is elaborately discussed in the opinion, and many
cases are cited in support of the doctrine therein announced.

The objection that the transaction pleaded as a special defense is void under the statute of frauds must be overruled.

We are of the opinion that, under all the circumstances, the court should have set aside the default, vacated the judgment, and permitted appellant to answer to the merits. The case is therefore reversed, with directions to the trial court to set aside the default, vacate the judgment, and permit appellant to answer to the merits on such terms as the court may deem just; appellant to recover costs of this appeal.

STRAUP and FRICK, JJ., concur.

ON REHEARING.

FRICK, J.

Respondent has filed an application for a rehearing in which it is strenuously insisted that we erred in holding that the averments contained in the answer as an affirmative defense are sufficient to avoid the statute of frauds. In support of the contention counsel cites cases where, under particular facts proved in those cases, there was no surrender, and that a parol executory agreement to surrender demised premises will not be enforced. We have not held anything to the contrary. Counsel seems to misconceive the purport and effect of the decision. In view of this we have deemed it best to add a few words to what is said in the original opinion.

The question before us was not whether the facts adduced at the trial of a case involving a surrender by parol was sufficient, or not sufficient, to constitute a surrender. Nor did we hold that a parol executory agreement to surrender may be enforced, but what we held is that an executed agreement to surrender, although by parol, may be sufficient. The only question for determination was whether the averments contained in the answer, which are stated in the

opinion, are broad enough to admit proof of an executed agreement to surrender the demised premises. If the agreement to surrender is shown to have been fully executed by both parties, neither one of them can thereafter claim that the agreement was unenforceable because within the statute of frauds. In such event nothing is enforced, except what the parties themselves willingly agreed to and as willingly performed. If the surrender was complete, and made with the consent of both parties, the law does not concern itself with the manner in which it was effected. It is only when an agreement which the law requires to be evidenced by a writing is sought to be enforced that the law does not authorize its enforcement, unless established in accordance with legal requirements. The affirmative defense set up in the answer contains averments which partake of both the elements of an estoppel and an executed agreement to surrender. While we entertain serious doubt as to whether the facts alleged are sufficient, as they now stand, to constitute an estoppel, still it is apparent that the statement in this regard could be cured by a more specific statement. Upon the other hand, we are quite clear that the facts pleaded are sufficient to admit evidence showing an executed agreement and a surrender of the demised premises. The answer, therefore, states at least one good defense.

The case of *Ogden v. Sanderson,* 3 E. D. Smith (N. Y.) 166, which counsel for respondent insists is decisive of the question in his favor is, in our judgment, just to the contrary. While the facts with regard to a parol agreement of surrender in that case are exactly parallel with the facts in this case, the decision, however, squarely rests upon the fact that the agreement there in question was never executed. The court, at page 169, in speaking of the negotiations, says: "All these negotiations, however, appear to have failed." Further, in speaking of what constitutes an eviction, it is said:

"An eviction of a tenant is an interference with his possession of the premises, or some part thereof, by or with the consent of the landlord, by which the tenant is deprived of the use without his consent; but, where the tenant is present at a negotiation to relet the premises to a third person and does not object, but at the same time is proposing a surrender on his own part, a possession by such third person, under such circumstances . . . could hardly be considered an eviction."

It is true that the court in that case held that there was no surrender because, as it said, "no surrender is proven. A proposed surrender was talked of, but not executed, and this lease could only be surrendered by writing or by operation of law." If possession of leased premises is surrendered by the tenant and accepted by the landlord, it constitutes a surrender by operation of law. This is the effect of the holding in the original opinion. If, therefore, appellant can establish the fact that the agreement to surrender was fully executed with the consent of both parties, then he has a good defense to the action. This proof, we think, is admissible as the answer now stands. But if the averments are not deemed sufficiently specific, respondent has a remedy by special demurrer. As against a general demurrer (which the objection in this case, in effect, is), in view of the liberal construction that our statute requires to be given to pleadings, we think the averments are sufficient. The application for a rehearing, therefore, is denied.

STRAUP, C. J., and McCARTY, J., concur.