Domenick L. Gabrielli, J.
The petitioner is and has been engaged in the business of stone quarrying since its incorporation in 19'20. It further appears that since 1925, when it acquired the premises in question, the petitioner had conducted the business of crushing, blasting, quarrying and preparing for market, stone, rock and other substances. It is conceded that these operations were conducted on one parcel of the entire premises involved since the time the whole of the premises were purchased in 1925; but, there is serious dispute as to whether these operations had been conducted on the balance of the land involved.
In 1948, the respondent, Town of Grates, adopted a Zoning Ordinance. It is undisputed that the first above-mentioned parcel and the parcel described in Exhibit “B” were then included in the “ Industrial E ” zone and that a second parcel was then made a part of the “ Residential ” zone.
The Zoning Ordinance provided, in part, that it was permissible, in such Industrial “ E ” District to engage in the business of “ rock crushing, sand and gravel pit.” (§ 60, subd. 19); as well as “any industrial process emitting dust, odor, gas, fumes, noise or vibration when comparable in character to or not in aggregate amount exceeding that of any use specified above in this subdivision” (§ 60, subd. 22). It is apparent that the operations of the petitioner, insofar as they relate to the land contained in the Industrial “E” zone, were permissible under the provisions of the Zoning Ordinance of 1948.
In addition it is clear, and tacitly admitted, that the operations of the petitioner on the lands owned by it in the Industrial “ E ” District to the north of the New York Central Railroad lands had been consistently conducted in the same fashion as at the time of the application, since 1925; and, therefore, were in the nature of a nonconforming use. From the records before the court, there can be no doubt about this.
*629 In February of 1950, the respondents proceeded to enact an Excavations Ordinance which required an applicant to obtain a permit and approval to conduct soil-stripping, blasting and excavation work.
Sometime prior to January 25, 1963, the respondents served a “ stop-work order ” upon the petitioner, directing it to cease quarrying operations on lands south of the New York Central Railroad altogether, because of its failure to obtain an excavation permit. On January 25, 1963, the petitioner (without conceding the validity of this ordinance) simultaneously made two applications for excavation permits, one for each of the two parcels involved.
The applications were not approved by the respondents. There is no evidence of any reason therefor nor what was considered by the respondents in not approving the applications. The record before the court in this regard is barren of any facts, which would support the failure to approve the applications.
The petitioner contends (1) that the Excavations Ordinance is invalid in that the notice of hearing regarding the adoption of the ordinance was improperly published and that (2) in any event, even if the ordinance is declared to be valid it had been conducting its operations prior to the enactment of either the Zoning Ordinance or the Excavations Ordinance and hence was entitled to the protection of a nonconforming use.
The respondents claim that (1) both of the premises described in Exhibits “ B ” and “ C ” of the petition are subject to the provisions of the Excavations Ordinance and that (2) these premises were never used for quarrying purposes, are not a part of an entire tract, and in fact these premises were always used for farming and nursery purposes by petitioner’s tenants.
The petitioner seeks an order directing the cancellation and rescission of the ‘ ‘ stop-work order ’ ’ and for a direction that the applications for excavation permits be approved and granted.
We shall first direct our attention to the claimed invalidity of the enactment of the Excavations Ordinance. The petitioner contends that the notice of public hearing prior to its adoption was improper and did not meet the requirements of the Town Law (§ 133), and in particular that the notice of hearing did not have included therein, the whole of the proposed ordinance.
It is conceded that the whole of the proposed (and subsequently adopted) ordinance was not published. The records reveal that the published notice of hearing in addition to indicating *630 the time and place thereof, stated that the “ proposed ordinance is intended to regulate excavations, the operation of sand and gravel pits, stone quarries, stripping of top soil, and other uses mentioned in said proposed ordinance * * * A copy of said proposed ordinance is on file in the Town Clerk’s Office of the Town of Grates where the same may be inspected and read by any person or persons interested therein ”,
Following the public hearing as set forth in the notice, the ordinance in question was adopted on February 13, 1950 and on February 14, a notice was duly published to the effect that it had been adopted and passed and that “ The object of said ordinance is to regulate the construction on, removal of materials from, filling up, draining, cleaning, operating and using any lands or other premises for sand or gravel pits, stone quarries, stripping of top soil, or for other excavation purposes, and prohibiting the use of any lands or other premises for the aforesaid purposes which do not comply with such regulations. A copy of said ordinance is on file in the Town Clerk’s Office of the Town of Oates, New York, where the same can be read and examined by any person interested in the same.”
The foregoing language used in the notice of hearing and the published notice of adoption of the ordinance becomes important because of the provisions of chapter 686 of the Laws of 1934 which provide as follows: “ Any law to the contrary notwithstanding, it shall be sufficient in the case of any town in Monroe county which is or may be required or permitted by statute to publish any ordinance which such town is or may he authorised hy la/w to adopt in one or more newspapers so as to make such ordinance effectual, to publish in such newspaper or newspaper's a summary describing the subject of such ordinance and a notice stating that the whole of such ordinance is on file with the town clerk of such town, provided that a copy of such ordinance is kept on file with the town clerk during the period of such publication in lieu of publishing such ordinance in full in such newspaper or newspapers. Nothing herein contained shall dispense with any posting of such ordinances which is or may be required or permitted by law.” (Italics mine.)
This court, therefore, holds that the notice of hearing and thereafter, the notice of the adoption of the ordinance were duly published, and, in those respects, the ordinance whs duly adopted.
There is one further reason for overruling the petitioner’s objection to the method of adoption of this ordinance.
It would here be proper to point out that at the time of the public hearing prior to the adoption of the Excavations Ordi *631 nance, that the persons interested in quarrying appeared at the hearing and that the attorney for the petitioner further communicated with the respondents to the effect that‘1 on behalf of Dolomite Products Company, we wish to enter our objection to the passage of this ordinance.”
The respondents, in addition to the publication of the notice of hearing and notice of adoption of the ordinance, have pointed out that the petitioner had been well informed about and had participated in discussions preliminary to the adoption of the ordinance.
The purpose of the requirement for publication of the notices is to advise those who may have any interest in, and desire to be heard upon, the proposed administrative action. It would seem that, as to those who had actual notice of the hearing, the purpose of the statute requiring publication would have been served.
It has been held that such notice or appearance at and participation in the hearing, would constitute a waiver of any alleged errors in giving notice; and that the petitioner could not, under these circumstances, be prejudiced. (See North Shore Beach Property Owners Assn. v. Town of Brookhaven, 115 N. Y. S. 2d 670; Matter of Gerling v. Board of Zoning Appeals of Town of Clay, 11 Misc 2d 84, revd. on other grounds 6 A D 2d 247; McLain v. City of Chico, 156 Cal. App. 2d 161; Hirsch v. Zoning Bd. of Review of Pawtucket, 56 R. I. 463.)
It does not follow, however, that the operations of the petitioner were illegal, contrary to established rules, or violative of any ordinances.
Let us first direct our attention to that parcel described as Exhibit “ B ” in the petition. For the purposes of the present proceeding it is conceded by the respondents that this land is located in an area zoned Industrial “ E ” under the provisions of the Zoning Ordinance of 1948. In addition there is no denial of the allegations of paragraph “ 2 ” of the petition, alleging this fact.
The provisions of the Zoning Ordinance of 1948 in subdivisions 19 and 22 of section 60, would seem to allow operations of the character generally described in the present application.
We are, therefore, to decide whether or not the respondents have improperly denied petitioner’s request for a permit and cancellation of the stop-work order.
The only evidence before the court in this regard is the request dated January 25, 1963 by petitioner’s attorney to have the application acted upon, followed by a consideration of this request by the respondents on February 1, 1963. The minutes *632 of the Town Board of that date, merely show that the request was received and read and then voted upon. Fragmentary as they are, these minutes do not reveal what matters, proposals or objections, if any, were considered by the Town Board. They merely reveal that the request was received and the application denied.
The petitioner claims, among other things, that the denial of excavating permits was predetermined by the respondents prior to any application therefor, and points to a newspaper article. This may well be, but the determination must await the procedure hereinafter directed, and it is expected that any questions in this regard will be developed upon the taking of any testimony or the holding of any hearing. This item could be vital.
It appears that the application filed by the petitioner for a permit and for the cancellation of the stop-work order fully complied with all the requirements of the Excavations Ordinance (§§ 5, 6, 7, 8, 9); and, unless legal objections which have their foundation in reason, logic and law can be established by the respondents, the application of the petitioner ought to be granted, with reference to the land described in Exhibit “ B ”. The permit cannot be arbitrarily withheld; nor should the action of the Town Board in denying such permit, be capricious or arbitrary. It may well be that the Town Board based its grounds upon matters which it ought not to consider. This cannot be determined upon the papers before the court.
It might be well to here note that the respondents have called to the court’s attention that a petition signed by people in the town objecting to the granting of the permit, was filed with it. This fact neither adds to nor detracts from the legality of any proceedings taken by the board. It has no part in these proceedings.
At first blush, it would appear that the application of the petitioner should be granted because the permit was arbitrarily denied. However, the state of the record is not sufficiently complete for a court to pass upon it and the matter, insofar as it applies to the parcel designated Exhibit “B ”, is remitted to the Town Board for a full and complete consideration of the application for a permit and for the making of findings which are susceptible to review as to the sufficiency of the supporting evidence. (See Matter of Barry v. O’Connell, 303 N. Y. 46; Matter of Winkler v. State Liq. Auth., 3 A D 2d 1011, affd. 4 N Y 2d 856; Matter of Elite Dairy Prods. v. Ten Eyck, 271 N. Y. 488; Matter of Syosset Holding Corp. v. Schlimm, 4 A D *633 2d 766 ; Matter of Lusby v. Shoemaker, 14 Misc 2d 421. See, also, Matter of Woodiwiss v. Jacobs, 27 Misc 2d 602.)
With reference to the parcel described in Exhibit “ G ”, it is undisputed that it is in a residential zone and its use is not necessarily therefore susceptible to the same rules applying to that area in the Industrial “ E ” section.
The petitioner claims this area is a part of lands already being used for quarrying operations. The respondents deny this and further claim it has been used for farming and nursery purposes. There is no way in which this court can determine this question upon the papers before the court.
It is entirely possible that this area, too, may be used for quarrying purposes provided it can be shown that (1) it was an expansion of a nonconforming use on lands previously owned by the petitioner (People v. Perkins, 282 N. Y. 329) and that (2) it has always been the intent of the petitioner to develop and use the entire lands owned by it, for the questioned purposes and that this was or should have been known to all involved.
These are matters of proof and cannot be assumed. All of the circumstances surrounding the use of the land, its purchase, investment, probability of nuisance, character of the operations of the petitioner, and the continuity of its operations would be of great assistance in making a proper determination; so also would its size, original character of the area, and declared or undeclared intent.
Although not every expansion or extension of certain operations will be permitted, the view has been taken that it is not essential that a nonconforming use exercised at the time a zoning ordinance is enacted should embrace an entire tract in order to entitle an owner to subsequently employ it all for the use. To so hold would deprive owners of the use of their property as effectively as if an ordinance was so drawn as to be completely prohibitive of all use. (8 McQuillin, Municipal Corporations [3d ed.], § 25.208, p. 521; De Felice v. Zoning Bd. of Appeals, 130 Conn. 156; Village of Ossining v. Meredith, 190 Misc. 142.)
In commenting on, and approving this theory, the Court of Appeals in Town of Somers v. Camarco (308 N. Y. 537, 540-541) said: “The courts, in order to afford stability to property owners who do have existing nonconforming uses, have imposed the test of reasonableness upon such exercise of the police powers. Therefore broad general rules and tests, such as expressed in People v. Miller (304 N. Y. 105), must always be considered in this context * * * A definition of reasonable-
ness can not be made for all occasions, and must, of necessity, be considered anew in the light of each problem presented.”
*634 It is quite obvious that an owner intending to carry on a quarrying operation acquires more land than he thinks he will need so that he will not be a source of nuisance to his neighbors. It must be assumed that for practical and economical reasons he must begin operations at one given point and continue from there to a point on his land where his natural resource ends or at his boundary line. For the same reasons, it is not feasible for him to quarry at different locations at the same time. To be also taken into consideration is the fact that the prior nonconforming use was not the ordinary “ run of the mill ” variety, but that here it involved a “ diminishing asset ”.
Certainly, under its police powers, the Town of Gates may prescribe conditions under which the land is used, such as health, sanitary and nuisance matters. However, a nonconforming use in existence when a zoning ordinance is enacted is constitutionally protected and will be permitted to continue, notwithstanding contrary provisions of any later ordinance which might impose arbitrary or unreasonable conditions. (People v. Miller, 304 N. Y. 105; Matter of Fairmeadows Mobile Vil. v. Shaw, 30 Misc 2d 143.) As already indicated, there are no facts upon which it can be stated that the regulations of and determination made under the Excavations Ordinance, are reasonable or legal.
This court, therefore, concludes that:
1. The matter, insofar as it applies to the prayer for relief directed to the property described in Exhibit “ B ” attached to the petition (and set forth in par. “2” of the petition), is remitted to the Town Board for a full and complete consideration of the application in which the petitioner shall be afforded an opportunity to be heard and present evidence; and for the making of findings which are susceptible to review, as to the sufficiency of the evidence, which should be done forthwith; and
2. The matter, insofar as it applies to the prayer for relief directed to the property described in Exhibit “C” attached to the petition (and set forth in par. “3” of the petition), is returned to Special Term to take proof and for the presentation and submission of evidence as to (a) what use this particular land was put to prior hereto, (b) as to the character of the neighborhood at the present time and at all times prior hereto, (c) as to the evidenced intent of the petitioner as to the use of this land, when the same was purchased, (d) the character, scope and area of the operations of the petitioner, as well as all other facts which would permit a determination to be made as to whether this land is susceptible to the theory of law that there was and is a proper expansion or extension of a nonconforming use.
*635 The prayer for relief also requested an order directing that excavating permits he issued to the petitioner. For the foregoing reasons, this request must await the completion of the hearings described in the above paragraphs designated (1) and (2).