390 P.2d 235

**Eldred R. HAMILTON et al., Plaintiffs and Respondents,**

v.

**SALT LAKE COUNTY SEWERAGE IMPROVEMENT DISTRICT NO. 1 et al., Defendants and Appellant,**

**Granger-Hunter Improvement District, et al., Amici Curiae.**

No. 9910.

Supreme Court of Utah.

March 16, 1964.

J. Lambert Gibson, Salt Lake City, for defendants and appellant.

Golden W. Robbins, Paul E. Reimann, Salt Lake City, for plaintiffs and respondent.

Edward W. Clyde, Fred L. Finlinson, Paul H. Ray and S. J. Quinney, Salt Lake City, for amici curiae.

HENRIOD, Chief Justice.

Appeal from a judgment voiding a sewer bond election. Affirmed.

The sewer district raised two points on appeal: 1) that the mandatory provisions of the statute with respect to the bond election became directory only, after the election, and 2) that the protestants here did not demonstrate that there were sufficient illegal votes to alter the result.

We cannot agree with the first point on appeal, under the facts of this particular case, although as a general proposition, the point might be well taken in a case, if departure from statutory interdiction is quite inconsequential. Each case must be bottomed on its own facts.

As to the second point on appeal, we think that plaintiffs did not point numerically to a sufficient number of specific and proven illegal ballots, which were 16, to overcome the 95 plurality in the election where 2,727

ballots were deposited, but we do believe other uncontroverted evidence added to the proven illegal votes lends substance to a conclusion that the election may have turned out otherwise if statutory requirements and proper procedural methods had been employed.

The trial court based its decision on the grounds that the County Clerk had failed to furnish a certified list of registered voters 1) residing outside of municipalities but within the sewer district[1] and 2) those within the district generally.[2] The court, we believe, was in error to some degree on both counts but his decision was also based on the fact that the resolution of the trustees *required* such lists, which requirement concededly was not fulfilled. Hence his judgment seems to be justified. The court also was most careful to point out that if any of the other objections raised by the plaintiffs were well taken, they would support and validate the judgment. This is in line with our own pronouncements.[3] Suffice it to say, plaintiffs voiced about every

objection that could have been raised. Some were not well taken. Others, however, either individually or collectively have sufficient merit to sustain the trial court's judgment invalidating the bond election.

Before the facts are documented here, we feel it of sufficient concern to allay some fears reflected by the litigants and any "amicus curiae."[4] Doing so, we generalize and hold the following:

■ 1. This decision will not affect similar cases where the issuance of bonds has become fait accompli and the time for protest has expired.[5]

■ 2. We need not canvass matters raised for the first time on appeal.[6]

■ 3. A state senator ipso facto is not ineligible to act as trustee for a sewer district.

■ 4. A sewer bond election is a special election (20–1–3), required to be "held at other times" than on a general election day (20–1–1).[7]

---

1. Title 17–6–3.1, Utah Code Annotated 1953, having to do primarily with trustee elections, not bond elections.
2. There seems to be no statute and none is cited, imposing such a duty on the County Clerk.
3. Rasmussen v. Davis, 1 Utah 2d 96, 262 P.2d 488 (1953).
4. A friendly Latin phrase that as a practical matter, usually is a misnomer, since "amicus curiae" generally turns out to

be a champion of one or other of the litigants, and seldom has in mind the court's thirst for knowledge and enlightenment.
5. See Tygesen v. Magna Water Co., 13 Utah 2d 397, 375 P.2d 456 (1962).
6. North Salt Lake v. St. Joseph Water Co., 118 Utah 600, 223 P.2d 577 (1950); In re State in Interest of Woodward, 14 Utah 2d 336, 384 P.2d 110 (1963).
7. This is the first time, to our knowledge, that this particular issue has arisen.

■ 5. Protestants reasonably and substantially must demonstrate that the election would have resulted differently but for departure from statutory interdiction or dereliction at the ballot box, and it is for the judicial process to determine each case on its own merits, where timely and proper protest has been registered.

■ 6. Where voter qualification is based on taxpayer status, official tax rolls covering the area are presumed to be accurate and to reflect such status, until otherwise shown.

■ 7. Voter eligibility is not solely determinable by an unsworn statement by him who presents himself as a voter in the area involved, absent anything else.

8. Where a sewer district's boundaries bisect general, regular, voting districts, reasonable and accurate procedures must be effected by the trustees to determine voter eligibility in the sewer district and to exclude persons not eligible.

9. Whether wives are qualified as voters because of their inchoate dower interest, or whether buyers under a conditional sales contract, are eligible to vote if they do not appear on the tax rolls, were not issues in the case, as conceded in defendants' brief,

and hence are determinable when and if they arise.

The sewer district in which the bond election was to be conducted is a wide area of about 54 square miles. The trustees of the district, one of whom was a state senator, by resolution, called for a bond election to construct and maintain sewer facilities. The election was to be held on the date required for general elections (Title 20-1-1, U.C.A.1953). Special elections such as this are to be "held at other times." The trustees' resolution required the County Clerk to furnish the lists that the trial court said had to be furnished by the Clerk before the election could be valid.

The trustees designated established regular, official general election districts as the same voting districts for the special bond election districts, and named the same registration agents as previously had been named by a different agency of government, but named their own judges for the special bond election. Four of the seven general election districts were bisected by the sewer district, so that a goodly number of voters at the general election were qualified to vote in the latter, but may have been ineligible to vote on the bond issue, because they may not have been "qualified voters as shall have paid a property tax in the (sewer) district"

Although pertinent, our decision will be authoritative as to such issue here, and in futuro, but not to any past elections, if any there may have been, where general and special elections have been held on the same day. It is the legislature's prerogative to change the statutes in this respect if it so desires.

the year before (17–6–3.1). The trustees in their resolution specifically required that this provision be enforced.

The resolution, as adverted to above, required the County Clerk to 1) furnish a list of voters residing outside of municipalities, but within the sewer district, and also 2) a certified copy of a list of those living in the district generally. The first list requested applied only to voting on trustees under 17–6–3.1, not as to the bond issue, and hence was a confusing, but idle gesture. The second list required had to do, perhaps, with the bond issue, but added also to the confusion since obviously an effort was made to comply with 17–6–3.3, which provided for the bond election procedure to be in accordance with Utah laws having to do with "elections on the issuance of *courthouse* bonds by counties." We can find no such Utah law, but assuming the legislature intended not to use the word "courthouse," a matter we do not decide, the circumstance is mentioned to point up one of the many factors that in the aggregate reflected the confusion mentioned.[8] At any rate the County Clerk, apparently willing, did not furnish the lists required in the resolution because, he said, it was impossible to canvass the wide area before the election and thus determine the addresses of the prospective voters. (Emphasis ours)

Another part of the trustees' resolution set the polling places in two districts, at definite sites, whereas the voters in those districts, in order to vote, had to do so at two other places—a circumstance not entirely conducive to a full enjoyment of the voting franchise, but rather in discouragement of it. In another district the judges ran out of ballots, and persons for that reason could not vote. In at least one district persons deposited ballots in the wrong box,—the general election, not the bond election ballot box. In another district a judge was called on the phone after the polls were opened, and missed the first 45 minutes of the election. It was demonstrated, without dispute, that at least 16 nonresidents of the area voted on the bond issue. These people nonetheless claimed eligibility to vote only by their unsworn written statements.

It was demonstrated that in the election where 2,727 votes were cast, 632, or roughly 23%, were by persons who were not on the tax rolls, and nothing but their unsworn statements indicated that they were taxpayers in the district as required by law.

The same issue had been presented at a bond election a year before on a date other than the general election and it was defeated, lending some support to the legislature's wisdom in requiring that such elec-

---

8. We commend to the legislature a look at 17–6–3.3 to rectify this apparent error, and a recanvassing of the whole section and title because of lack of specificity, particularly with respect to voter qualification.

tions should be on dates other than the general election.

It appears from the facts in this case, in the light of the principles enunciated above, that there was no machinery set up by the trustees which actually could determine voter qualification. We think the trustees misconstrued the statute upon which they relied for such purpose, since 17–6–3.1 had to do with election of trustees, and there was none to be elected. Even so, no list showing addresses or facts reflecting the status of the voters was available to segregate voters in the sewer district from those in the bisected general districts living outside the sewer district. The presumption of accuracy of the tax rolls was not rebutted, and 632 persons cast ballots that admittedly were not on the tax rolls. This, together with the many other irregularities, in the aggregate, compels us to decide that there was no substantial compliance with the statutes imposing upon the trustees the duty to call the election, give notice thereof, hold the election and determine voters' qualifications. As we have stated before if, for no other reason, the election was void as having been held on a general election day.

McDONOUGH, CALLISTER, and WADE, JJ., concur.

CROCKETT, J., concurs in the result.