461 P.2d 290

**A. J. LIMB, dba Limb Realty, Plaintiff and Appellant,**

v.

**FEDERATED MILK PRODUCERS ASSO-CIATION, Inc., Federated Dairy Farms, Inc., and Kenneth T. Allred, Defendants and Respondents.**

No. 11543.

Supreme Court of Utah.

Nov. 12, 1969.

Wendell P. Ables, Salt Lake City, for appellant.

Richard H. Moffat, of Moffat, Iverson, & Taylor, Salt Lake City, for respondents.

ELLETT, Justice.

The plaintiff is a real estate broker. The defendant Kenneth T. Allred on behalf of defendant Federated Milk Producers Association, Inc., signed and gave to one John Williamson a letter in the following words:

October 25, 1963

Mr. John Williamson
Salt Lake City, Utah

Dear Sir:

This is to authorize you to negotiate with clients for the purchase of 723 South State Street, Salt Lake City, Utah, those premises heretofore operated under the name of Cloverleaf Dairy. The terms are as follows:

1. The sale price and terms must be agreeable with us.

2. This authorization can be terminated by either party at any time, and will be automatically terminated should said property be sold to anyone.

3. You are only authorized to negotiate with the following persons for the sale of said property:

Sears Co.                                    Sid Horman
Huntington-Maxwell Hardware Co.
Bonneville on the Hill K. T. A.
Capital Chev. K. T. A.
Salt Lake Transfer K. T. A.

4. In the event that there is ultimately a contract of sale or sale entered into with any of the foregoing, then and in that event, we agree to pay you a sales commission of 5% of the selling price.

FEDERATED MILK PRODUCERS
ASSOCIATION, INC.
By: /s/ Kenneth T. Allred

On or about February 7, 1964, Federated Milk Producers Association, Inc., was merged with and into defendant Federated Dairy Farms, Inc.

Mr. Williamson was a real estate salesman in the office of plaintiff. Neither plaintiff nor Mr. Williamson was able to sell the listed property. On April 27, 1964, a letter of termination of the authority granted to Mr. Williamson was mailed to him, but because of wrong address he never received it. In his deposition Mr. Allred, who had signed the letter of authority, said that he phoned Mr. Williamson prior to the letter of termination and advised him that such a letter was being mailed and if Mr. Williamson had any prospects, he should let Allred know, as the property was being listed with another realtor. Allred further testified that Williamson said, "Go ahead and list the property because he [Williamson] had no further interest in it." Mr. Williamson in his deposition stated that he would not deny the conversation but did not believe it occurred.

In May of 1964 the other realtor painted in a conspicuous place on a fence around the property a large sign about ten feet by twelve feet stating that the property was for sale by that realtor.

Almost two years later that relator induced Sears to buy the property, and the defendant paid him the regular real estate commission. This action was thereafter commenced by plaintiff and Mr. Williamson for a commission in the amount of $11,550 claimed to be due under the letter set out above. Mr. Williamson was dismissed as a party plaintiff by the court on motion of defendant. Thereafter, both parties moved for summary judgment, and that of the defendant was granted, while that of the plaintiff was denied. The plaintiff appeals from the denial of his motion for summary judgment and also from the granting of the summary judgment in favor of the defendant.

In his deposition Mr. Limb, the plaintiff, testified concerning a conversation with Mr. Williamson prior to the date of the letter written by the defendant. He stated:

He told me that he understood the property was to be for sale and he had contacted and was to contact a Mr. Allred; and we discussed the property and I told him if I could help him to let me know, on the listing.

It will be noted that the letter upon which the plaintiff relies for recovery is directed to Mr. Williamson alone, and the promise of the defendant to pay a commission is made to Mr. Williamson and not to Mr. Limb. It is apparent that Mr. Williamson got the agreement in his own name and that at that time Mr. Limb intended to assist him in the listing.

Section 61–2–10, U.C.A.1953, reads:

It shall be unlawful for any real estate salesman to accept a commission or

valuable consideration for the performance of any of the acts herein specified from any person, except his employer, who must be a licensed real estate broker.

It is, therefore, evident that Mr. Williamson being only a real estate salesman could not collect a fee from the defendant and that the promise to pay him would be unenforceable. Mr. Limb attempts to substitute himself as a party and collect on a joint contract.

This is not the case of a contract made by an unauthorized agent in the name of a principal who may ratify the contract as made and thus make himself liable to the third person and also keep the benefits which a third person intended to confer upon him. There is nothing for Mr. Limb to ratify, as he is not named as a party to the letter.

Even if the contract were not void, Mr. Limb could not recover in this case. Mr. Williamson was not a broker but was attempting to act as one when he secured the letter from the defendant. A broker employed by an owner to purchase or sell real property bears a fiduciary relationship to his employer,[1] and the applicable law is stated in 3 Am.Jur.2d, Agency, § 323, to be:

If the contract made by an agent acting for an undisclosed principal involves elements of personal trust and confidence as a consideration moving from the agent, contracting in his own name, to the other party to the contract, the principal, while the contract remains executory, cannot, against the resistance of the other party, enforce it, either to compel performance by the other party or to recover damages for a breach.

If the law were otherwise, a party would be deprived of his right to choose those fiduciaries with whom he wished to deal.

Before Mr. Limb could recover in this case, he himself must have had a contract in writing with the defendant. See the Statute of Frauds, Section 25–5–4(5), U.C.A.1953.

There is no disputed issue of fact in this case which would require a trial on the merits. The judgment of the trial court is, therefore, affirmed.[2] Costs are awarded to the respondents.

1. 12 C.J.S. Brokers §§ 6 and 8.
2. The dissent in this case is without merit. The law is well settled that a trial court should be affirmed if on the record made it can be. The general law is stated in 5 C.J.S. Appeal & Error § 1464(1) as follows: " * * * The appellate court will affirm the judgment, order, or decree appealed from if it is sustainable on any legal ground or theory apparent on the record, even though such ground or theory differs from that stated by the trial court to be the basis of its ruling or action, and this is true even though such ground or theory is not urged or argued on appeal by appellee, was not

TUCKETT, J., concurs.

CROCKETT, Chief Justice (concurring in the result).

I concur in the affirmance of the trial court's judgment by the main opinion; and also agree with the concurring opinion of Justice Callister.

CALLISTER, Justice (concurring in the result).

I concur in the result of the majority opinion, but premise my reason upon a different ground. The contract specifies that

raised in the lower court, and was not considered or passed on by the lower court. * * * "

The above paragraph was inserted to answer the original dissent of Mr. Justice Henriod. Since he has amended that dissent and filed another, it is necessary to make a further explanation herein. He now cites ten cases to show what the law in Utah is. I have no quarrel with any of those cases, for in each of them except that of Aaron v. Holmes, 35 Utah 49, 99 P. 450, the court refused to *reverse* the trial court on grounds not presented below. In the excepted case this court properly held: "In the first instance, if the complaint wholly fails to state a cause of action, objections to it on that ground may be successfully urged at any time. In the case of Flemetis v. Mc-Arthur, 119 Utah 268, 226 P.2d 124 cited in the dissent, Mr. Justice Latimer said: "This court will not found a reversal upon defects which were not put in issue in the court below, but which are suggested for the first time on appeal." The distinction which the dissent fails to recognize is that the appellate court will *affirm* a judgment on grounds not urged below, but will not *reverse* the lower court on *errors* claimed for the first time on appeal.

it can be terminated by either party at any time, and there is no provision as to a requirement of notice.

A requirement that notice be given will not be read into a contract providing that it may be terminated by either party at any time but containing no provision as to notice of termination. * * *[1]

The acts and conduct of the parties were inconsistent with the alleged continued existence of the contract, and the trial court properly granted summary judgment to defendants.

In addition to the citation from 5 C.J.S., supra, the following quotations are submitted as illustrative of what the law is:

Hall v. Florida Board of Pharmacy, 177 So.2d 833 (Fla.1965): "Assignments of error are required to be filed by the appellant or an appellee who seeks reversal of the lower court, but not by appellee who seeks no affirmative relief on appeal."

Anderson v. Gousset, 60 Ill.App.2d 309, 208 N.E.2d 37 (1965): "Under well established rules of procedure, this assumption will be conclusive in this Court since we will not search the record for the purpose of reversal but only to affirm."

Woolfolk v. Semrod, 351 P.2d 742 (Okl.1960): "The successful party may, without cross-appealing or assigning errors, save the judgment by showing that errors were committed against him below which, if corrected, will make the result reached below correct."

Mr. Justice Henriod has now amended the second dissent and filed his third one. No further reply is necessary except to state that his dissenting Honor and I do not read the record in this case with a unanimous understanding.

1. 17 Am.Jur.2d, Contracts, § 498, p. 972.

HENRIOD, Justice (dissenting).

I respectfully dissent, since I believe the main opinion quite radically has departed from elementary principles of appellate review: that the Supreme Court does not decide cases or even take cognizance of matters not raised on appeal, or raised for the first time on appeal.[1]

The main opinion sets out a letter addressed *by an agent of the defendant*, Federated Milk, *to an agent of Limb, plaintiff* real estate broker and *decides the entire case on the fact that the listing letter was addressed only to Williamson,—not to Limb*.

It is reflected in the record by all principals that Williamson was Limb's agent and acted in every instance as a salesman for the latter. Several conversations were had between the defendant's representatives and Limb himself as principal for whom Williamson acted, and at no time before trial, at trial, or on this appeal did anyone question Williamson's authority to act for Limb. This fact is about the only one that *is* certain and undisputed,—yet the main opinion ignores it. The majority arbitrarily rejects any opportunity for hearing by the simple conclusion that a letter addressed to an individual, though conceded by all parties to be an authorized agent, negatives any possibility of a listing contract because not addressed to the broker personally. Contrary to such a novel conclusion, *all* the parties here considered that there *had been and continued to be a valid listing*, so that the letter which seemed to the main opinion to be so lethal in preventing a binding listing agreement, was not so calamitous to the people who treated it as, and understood it to be, a valid listing agreement. The addressee and/or address were of no moment to anyone except the main opinion. There was an oral and written effort made by defendants to *terminate* a concededly *existing contract*.

Mr. Justice Ellett in footnote No. 2 of his opinion says this dissent is without merit. He cites and quotes from 5 C.J.S. "Appeal & Error" § 1464(1). The quotation, lifted out of context nonetheless presumes to state the law for every state on the scope of appellate procedural review, and the law in this case. This, or any other statement from the compilation, may be an easy generalization of principles, but its mere quotation has nothing to do with this case.

In this case there is nothing in the record that affirmatively sustains the trial court on the unwarranted theory advanced to the effect that there *was no contract* because the letter was addressed to one not

1. With the possible exception that in a proper case an appellate court may, sua sponte, question its own authority on constitutional grounds, or where an individual's constitutional rights may grossly have been neglected,—neither of which circumstances is present here.

the plaintiff. The record clearly shows that *all* the parties *admitted* that there was a listing agreement, and so *intended*. Plaintiff's complaint sounded ex contractu. The record shows by the admissions and conduct of the parties,—that Williamson was Limb's agent. This and defendant's points on appeal that 1) the contract was terminated and without consideration, 2) that plaintiff was *estopped* from recovering a commission *thereon,* and that 3) there can be no recovery because defendants' defenses were not ruled upon, all show an agency and a contract with plaintiff.

. The record itself reflects the antithesis of the main opinion's gratuitous interjection into this case of a new theory,—not raised at all by any of the litigants either before or after the appeal,—but by the sua sponte, uninvited and unwarranted conclusion of this court itself, and by its own point raised for the first time on appeal. I think, therefore, that the main opinion is out on a Limb.

Mr. Justice Ellett's cited generalization found in Corpus Juris Secundum, at least requires and concedes that for affirmance there be grounds therefor, which are "apparent on the record." This does not mean that the appellate court must supply a reason if there be a conceivable one, in or out of the record, to support one view not pointed out by anyone on appeal. Such tedium would put a premium on idolence and inefficiency of a party litigant. To do so casts the appellate court in the role of advocate and counselor for one side in derogation of equal empathy for the other. Such procedure at least suggests some sort of preferential treatment. It seems that logically one must conclude from the main opinion that rules on appeal and briefs are of little or no value and thus dispensable.

I am of the opinion that to maintain some modicum of order on appellate review, a healthy, fair and highly practical rule is that which already we have enunciated in many cases, to the effect that if error is not raised at all or is claimed for the first time on appeal, we will not entertain it,—and particularly should this prevail where anyone on the court sua sponte and for the first time on appeal raises a point that cannot be sustained anywhere in the record by any amount of searching.

The distinction made in the main opinion between "affirming" and "reversing" seems to be one without purpose or substance. If we "affirm" because the record reflects correctness of a lower court decision,—whether the "reason" for reversal was pointed out for the first time on appeal by a litigant, and ignored by this court, thus affirming the lower court, or the court spots in the record the reason for affirming irrespective whether a point is or is not raised for the first time on appeal, thus affirming the trial court, the net product is the same,—affirmance, and there seems to be no necessity to talk about

"reversal." But if this court simply affirms where the record shows that there is no reason at all to sustain the lower court, whether by ignoring points raised for the first time on appeal or by the court manufacturing a nonexistent basis for affirmance,—it follows that an appellate court simply is undiscerning, or unwittingly illogical and inaccurate.

This writer, in a case like the instant one, prefers to adhere to the simple, fair and fundamental principle of appellate review repeatedly enunciated by this court and reflected in Lepasiotes v. Dinsdale, 121 Utah 359, 242 P.2d 297 (1952), where it was said:

> * * * *Without pointing out any specific errors relied on, defendants maintain that on the whole record the trial court erred in admitting undesignated testimony and in failing to grant a motion to dismiss.* * * *
>
> * * * * * *
>
> *As to any prejudicial error claimed, none of the many rulings on admission of evidence was assigned specifically on appeal as constituting prejudicial error, so that any decision thereon would require discussion of all objections,—no one of which plaintiff has had an opportunity to meet in her brief because of such non-designation. Therefore, we feel constrained not to review those matters which plaintiff cannot defend against because not called to attention by her opponents.*

The Utah cases are legion that support the contention and principle enunciated in the Lepasiotes case and in this dissent. We might refer to a few.

In the Matter of the Estate of Ekker,[2] a 1967 case penned by Mr. Justice Callister, concurred in unanimously, including Mr. Justice Ellett, author of the main opinion, and his brethren concurring with him, it says:

> Neither of the first two points were raised in the pleadings nor put in issue at the trial. Therefore, they cannot be considered for the first time on this appeal.

In Riter v. Cayias,[3] another 1967 case, a *unanimous* decision, also concurred in by Mr. Justice Ellett, Mr. Chief Justice Crockett had this to say:

> Plaintiff in her brief makes the claim that if the ditch referred to is not on her property, she has acquired an easement in its use. This is not an issue which was presented, tried and determined by the trial court. Accordingly it cannot properly be considered for the first time upon appeal.

About the same thing has been said by the author of this dissent.[4]

2. 19 Utah 2d 414, 432 P.2d 45 (1967).
3. 19 Utah 2d 358, 431 P.2d 788 (1967).

4. Hamilton v. Salt Lake County Sewerage Improvement Dist. No. 1, 15 Utah 2d 216,

Mr. Justice McDonough, in the 1963 case of Chumney v. Stott,[5] said:

This argument was not presented or discused below, but is first urged on appeal. It is generally held, and this court has so held, that matters not raised in the trial court will not be considered on appeal.

In Neilson v. Eisen,[6] Mr. Chief Justice Wolfe said this in a unanimous opinion:

It is not necessary for us to examine on their merits the three contentions raised by Mr. Eisen upon this appeal. They are all matters of defense which should have been raised below and cannot now be heard here for the first time.

In Flemetis v. McArthur,[7] Mr. Justice Latimer reiterated the principle when he said:

This is a case which well illustrates how wandering and vagrant can be the issues if we permit defendants to assert new theories in this court. * * * This court will not found a reversal upon defects which were not put in issue in the court below, but which are suggested for the first time on appeal.

As early as 1910, Mr. Justice Frick in Fee v. Nat'l Bank of the Republic,[8] ex-

pressed the same conclusion, as did Mr. Justice McCarty in 1908, in the case of Aaron v. Holmes,[9] adding to the other cases that agree, but which are not mentioned.

I am also of the opinion that it would be palpably unfair to decide a case on a theory raised by the court sua sponte, where the unsuccessful party on appeal has absolutely no idea or advance notice what this court will decide or the reasons therefor, being left cold and the victim of a theory never advanced and with no chance to meet it.[10]

Let the losing lawyer in this appeal and decision try to explain to his client.

As to other phases of this case relating to disputed facts, the record reflects sufficient controversion as to present a situation not subject to a summary judgment.

Because of the unwarranted departure of the majority with respect to principles of appellate review, and the existence of claimed facts not admitted but the subject of dispute, it would seem that we should return this case with instructions to try it to a recognized trier of the facts.

390 P.2d 235 (1964) ; Tygesen v. Magna Water Co., 13 Utah 2d 397, 375 P.2d 456 (1962) ; Westerfield v. Coop, 6 Utah 2d 262, 311 P.2d 787 (1957) ; Dolores Uranium Corp. v. Jones, 14 Utah 2d 280, 382 P.2d 883 (1963) ; Carson v. Douglas, 12 Utah 2d 424, 367 P.2d 462 (1962).

5. 14 Utah 2d 202, 381 P.2d 84 (1963).
6. 116 Utah 343, 209 P.2d 928 (1949).
7. 119 Utah 268, 226 P.2d 124 (1951).
8. 37 Utah 28, 106 P. 517 (1910).
9. 35 Utah 49, 99 P. 450 (1908).
10. Lespasiotes v. Dinsdale, 121 Utah 359, 242 P.2d 297 (1952).