Marvin A. MELVILLE and Renee B. Melville, et al., Plaintiffs and Appellants,

v.

SALT LAKE COUNTY, a body politic, et al., Defendants and Respondents.

No. 13734.

Supreme Court of Utah.

June 3, 1975.

Joseph S. Knowlton, Salt Lake City, for plaintiffs-appellants.

R. Paul Van Dam, Salt Lake County Atty., Kent T. Lewis, John G. Avery, Deputy Salt Lake County Attys., Salt Lake City, for defendants-respondents.

ELLETT, Justice:

The plaintiffs appeal from an adverse ruling holding that the Albion Basin was properly and legally zoned so that no house could be erected on less than fifty acres of ground. They contend that the zoning ordinance is capricious and arbitrary and that it was not legally enacted.

It will be noted that Salt Lake City, which derives a part of its culinary water from the basin, makes no contention of pollution; that the County Fire Department makes no claim of fire hazard; and that the County Board of Health makes no adverse claim to the erection of houses on smaller parcels of land.

What is rather obvious is that the Bureau of Land Management of the Federal Government does desire to secure the land in the basin for recreational purposes.

The testimony shows that without the zoning ordinance the land is worth many thousands of dollars per acre and with the ordinance it is worth less than ten per cent of its former value.

Mr. Blomquist, a county commissioner at the time the ordinance was enacted, testified as follows:

Q. The record shows this FR 50 zoning was put into effect in November of 1971 after the time the temporary regulations was in effect. This FR 50 wasn't put in specifically to curtail plaintiffs' property from being developed, was it?

A. I don't think there was any question but it was the intention of the County Commissioners to block that property from being developed.

\* \* \* \* \* \*

A. I think it was aimed at the plaintiffs because they had been in for a building permit on a site that had been approved as a subdivision. We didn't want that building going on, or their permit, and it had already been approved. And it was indicated to the County Commission that they could go ahead and build because the subdivisions had been approved, and we didn't want them getting a building permit and building buildings. So we did everything we could to stop them from doing that.

If the ordinance was not validly enacted, it will not be necessary for this court to determine whether it was arbitrary and capricious. Let us look at the manner in which the ordinance came to be upon the books.

Prior to 1971 the land in Albion Basin was completely unzoned. During that year the defendants placed a temporary restraint on building for a period of not to exceed six months in order to secure a report and advice from the County Planning Commission. This was done in accordance with the provisions of Section 17–27–19, U.C.A. 1953. Then in November, 1971, the defendants attempted to *amend* the unzoned area and gave notice of a public meeting to be held prior thereto by means of one publication in a paper of general circulation in Salt Lake County pursuant to the requirements of Section 17–27–14, U.C.A. 1953.

Now, in order to enact a valid zoning ordinance, the defendants must hold a public hearing and give at least thirty days' prior notice thereof by publishing *four* notices in a newspaper having general circulation in the county.[1]

The question is then posed: Can unzoned land be initially zoned by an amendment, or must it be covered by a new ordinance? In other words, can there be an amendment when there is nothing to amend?

By publishing only one notice, the defendants could only amend a zone.

If the law is as claimed by the respondents, then the Commission could zone an acre in an uninhabited section of the county by publishing notice four times, and thereafter any part of the county could be zoned and new districts created by giving only one notice in a newspaper having general circulation in the county. The purpose of the requirement for four publications is wise in that it is much more likely to get the public's attention and thereby have a more representative cross section of interested people than would a single publication.

The fact that these plaintiffs or some of them may have known of the public meeting does not cure the defect, as the land might have been zoned differently or not at all if a greater number of citizens had voiced their feelings at the hearing. It does not make sense to amend a zoning regulation on land that has no regulation covering it at all. Such action is the adoption of a new regulation instead of the amendment of an old one.

We hold that when a zoning regulation is to be applied to unzoned land, it must be done after notice has been given four times by publication and not under the guise of an amendment.

The judgment is reversed. No costs are awarded.

HENRIOD, C. J., and TUCKETT and MAUGHAN, JJ., concur.

CROCKETT, Justice (dissenting and commenting).

I am not persuaded that I should disagree with the determination made by the trial court, arrived at after six days of trial and extensive exploration and consideration of the issues involved.

In support of that ruling these points should be noted: (1) Salt Lake County adopted a uniform zoning ordinance in 1966 containing various regulations which apply to the unincorporated areas of the county and thus to the area here in question. Its position is that this proposed change in zoning is an amendment to that general ordinance. (2) Pursuant to the notice which was given, four to five-hundred people, including these plaintiffs, attended the hearing and that "nowhere during that hearing, or in the trial below,[1] did appellants claim any prejudice or lack

---

[1]. Section 17–27–10, U.C.A.1953.

[1]. That points raised below cannot be raised for the first time on appeal, see Hamilton v.

Salt Lake County Sewerage Imp. Dist. No. 1, 15 Utah 2d 216, 390 P.2d 235; Evans v. Shand, 74 Utah 451, 280 P. 239.

of opportunity to be heard . . . " because of lack of notice.[2] (3) The trial court found that the plaintiffs had failed to exhaust their administrative remedies before bringing this suit, in that they failed to take the appeal permitted to the Salt Lake County Board of Adjustment.[3]

Inasmuch as the main opinion does not treat the issue as to whether the zoning was capricious and arbitrary no useful purpose would be served by any extended discussion thereof in this dissent. I comment only briefly: (1) The zoning was for a valid and salutary purpose of conserving and protecting this wilderness area and watersheds. (2) It is within the discretionary prerogatives of (a) the planning commission; then (b) the county commission; then (c) the district court, to pass on any abuse of discretion by the former; and thus this court would be three times removed from the prerogatives of discretion. Wherefore, there is no basis upon which the zoning could be declared invalid on that ground by this court.

In view of the ruling of my colleagues, contrary to the judgment of the trial court, and my own, I think the following observation concerning the main opinion is warranted:

The statement to the effect that an amendment cannot apply to unzoned land impresses me as too broad. Whether under some circumstances an amendment could properly create new zoning might well depend on those circumstances, including how substantial the change was in relation to the zoning problem at hand. Suppose, e. g., the proposal was to rectify an irregularity or uncertainty, or to straighten or reconcile a boundary, of a zoned area, or between them, and included minor amounts of either unzoned or other zoned land. I think the amending procedure (Sec. 17–27–14) would be all right.

---

2. That anyone who had actual notice and suffered no disadvantage cannot complain of defects in notice is uniformly affirmed by the authorities, see Naylor v. Salt Lake City, 17 Utah 2d 300, 410 P.2d 764 (1966); Dolo-

mite Products Company v. Kipers, 39 Misc. 2d 627, 241 N.Y.S.2d 748, 752 (1963).

3. See Lund v. Cottonwood Meadows Co., 15 Utah 2d 305, 392 P.2d 40; 2 Am.Jur.2d Administrative Law, Section 595.