## STATE v. BURCH

No. 6269.  Decided August 2, 1941.  (115 P. 2d 911.)

*Nephi J. Bates,* of Richfield, for appellant.

*Grover A. Giles,* Atty. Gen., and *Zar E. Hayes,* Deputy Atty. Gen., for respondent.

PRATT, Justice.

Omer Burch, defendant herein, was convicted of branding a calf belonging to David Rider, with intent to steal the animal. That offense is a felony (section 103-34-8, R. S. U. 1933) and is punishable by imprisonment in the state prison for a term of not less than one nor more than ten years and by a fine of not less than $50 nor more than $1,000 or by imprisonment only. Section 103-36-6, R. S. U. 1933.

In brief, the following is the state's evidence: David Rider testified that some two years before he had two spotted cows ranging in Park Canyon, Utah; that he had not seen them since then as he had been in California; that he claims all cattle marked with his brand, Bar DR; that at times mistakes were made in branding; and that he does not claim the cattle of others upon which his brand has been placed by mistake.

Perry Hamblin testified that about a year before the trial he saw a spotted cow with the Rider brand upon it; that there was a bald-faced bull calf with the cow, which was not marked nor branded; that some nine months later he saw a spotted cow and a calf, the same two he believed, the calf then being branded with a TX, the brand used by the Burch family; that he saw them the second time in August 1939 (the offense is alleged to have been committed about July 12, 1939); and that the brand on the calf was fresh, the scab just beginning to peel off.

James E. Bunting testified that in August, 1939, he saw a spotted cow with the Rider brand upon it, and along with the cow was a calf, a white-faced, sixteen or eighteen months old stag (an animal that had not been castrated while as young as is usually the practice); that the stag bore the Burch brand; that the brand was fresh, probably a week or so old; that the stag was sucking the cow; that

the stag was white-faced, its horns were heavy, it had white along the neck and white legs; and that it had crop and slit earmarkings as used by the Burches, but that these markings were older than the brand.

Walter Daniels, Hugh Farnsworth, and Gerald Adair gave testimony about the cow and bull calf which we shall merely refer to as cumulative of that given by Perry Hamblin. The witnesses, who were stockmen, testified that from the action of the two animals, they were of the opinion that the calf was from the spotted cow. Not one witness described the cow other than as "a spotted cow;" but the calf received descriptions such as follows: long ear, bally bull, bally-faced red calf, one eye red, typically red bally Hereford calf, and white face and brisket and maybe some white on the belly.

Gerald Adair testified that Omer Burch was working with him looking after sheep; that on July 10, 1939, Burch, at the request of his mother, left camp; that in going home to the Burch residence, which took about a half day, Omer would have to pass the locality where the cow and calf were seen; that he returned July 13, 1939; that upon his return he stated to Adair that he had found a long-eared calf and branded it; that a few days later Adair saw a freshly branded calf with a spotted cow bearing Rider's brand; that he asked Burch if he was not afraid of what he had done, to which the latter answered that the calf was 18 month old and unbranded and belonged to the first one to find and brand it, and anyway those people did not ride in that country that time of year; that no names were mentioned, and it does not appear from the evidence that the two, the witness and Burch, were in the presence of any calf while so talking, nor does it appear that the calf was pointed out or described to Omer.

Neither the cow nor the calf were produced at the trial, nor exhibited to any of the parties who participated in the trial. There was no direct identification of either animal. The case rests solely upon descriptions and inferences

to be drawn from those descriptions and from the actions and statements made by defendant Burch.

After the evidence was in, the state rested and defendant moved for a directed verdict. The motion was denied. One of the defendant's assignments of error raises the question of whether or not this evidence should have been submitted to the jury.

When should circumstantial evidence be submitted to a jury? The answer to this question may aid materially in solving the difficulty in this case.

If circumstantial evidence is submitted to a jury, it is accompanied by an instruction that to convict upon such evidence, that evidence must exclude every reasonable hypothesis of innocence. That such an instruction is given implies that there is a question for the jury to decide as to whether or not such evidence does exclude that hypothesis. But, if the evidence is such that reasonable men would not differ upon the fact that it includes such an hypothesis, then it is not a question for the jury, but is one for the court. See discussion of circumstantial evidence in 20 Am. Jur. section 1217, starting page 1068; *McLaughlin* v. *State*, 18 Okl. Cr. 137, 193 P. 1010.

The present case is out of the ordinary in that there is not one ultimate fact necessary for a conviction that is substantiated by direct evidence. David Rider apparently did not know he had such a calf, if he did. He never saw it. He does not know whether "the spotted cow" was one of his, except from the brand, and admittedly this may have been placed upon the animal of another by mistake. He did not see the cow about which the witnesses testified, if they were all testifying about the same "spotted cow." As a matter of fact the man, other than the defendant, most affected by the offense, if there was an offense, knows no more about it than a juror. The difference between them is that he is willing to admit the ownership, whereas it must be proven to the juror beyond all reasonable doubt. As his knowledge of the fact is nihil, proof of

ownership must rest solely upon the belief of the witnesses that the spotted cow was his because so branded. The cow is not described in any other way than as a spotted cow, a dscription that would fit any number of cattle. As to whether all witnesses were talking of the same cow is speculative, unless we assume that they were, because she had the calf with her. But that assumes the vary fact to be proved, to-wit, that the calf was always with this one cow and therefore was from that cow, this as proof of ownership of the calf in David Rider. If we surmount this inference favorably to holding that they were all talking of the same cow, then we have to consider another inference on top of that. Was it one of the two spotted cows owned by David Rider? Here again the description of the cows is merely "spotted cows." There is nothing left but the brand, and the alleged owner admits that his brand may be on the stock of others.

We cannot escape the conclusion that so far as proof of ownership is concerned no one would question that the evidence is consistent with the innocence of the defendant. It becomes a laborious process of building inference upon inference to find the evidence consistent with the guilt of the defendant.

As to proof of branding of the particular calf in question we are again met with inferences that are not justifiable. That he branded "a long-eared" calf, possibly or probably against the wishes of its owner, and with the intention of appropriating it as his own, is not proof that the calf was that of David Rider, unless we again go through the process of inferences set out immediately above, and add to those inferences another to the effect that as he used the words "long-eared calf" he must have been referring to the same calf that the witnesses saw and described.

In a criminal case a motion for a directed verdict raises the question of whether or not, as a matter of law, there is substantial evidence of accused's guilt. *State* v. *Lewellyn*,

71 Utah 331, 266 P. 261. See, also, *State* v. *Gordon*, 28 Utah 15, 76 P. 882; *State* v. *Karas*, 43 Utah 506, 136 P. 788. Where the alleged offense and the accused's alleged connection therewith rest wholly upon circumstantial evidence, which evidence, as a matter of law, is reasonably consistent with the innocence of the accused, then this court must hold that there is not substantial evidence to support the guilt of the accused. 97 Am. St. Rep. 776, § 5, commencing 8th line. Such is this case.

The judgment of the lower court is vacated and set aside and the case remanded with directions to that court to enter a judgment of not guilty.

MOFFAT, C. J., LARSON, and McDONOUGH, JJ., concur.

WOLFE, Justice (concurring).

I concur in the result. I do so in the belief that there was no substantial evidence to show the defendant's participation in the alleged offense to warrent the submission of the matter to the jury. However, I do not agree in the views indicating that circumstantial evidence is to be considered by a jury in a different and more restricted light than is direct evidence. There are cases where the set of circumstances may be stronger than much direct evidence which could be adduced. In the dovetailing of circumstantial evidence criminal prosecutions may ofttimes be made equally as strong and convincing as in the use of direct evidence. Juries and trial courts should not be required to view it as weaker evidence which must "exclude the hypothesis of innocence." We should rest content with a rule that if a jury has no reasonable doubts about the guilt of a man, taking into consideration all competent evidence, it may convict, without including in opinions expressions which may be seized upon to confuse and confound the ordinary jury whose task is at best a difficult one.