268 P.2d 995

**DEVERAUX' ADOPTION**

**v.**

**BROWN (two cases).**

Nos. 8055, 8056.

Supreme Court of Utah.
April 1, 1954.

Gustin, Richards & Mattson, Salt Lake City, for appellant.

S. E. Blackham, Provo, for respondent.

WADE, Justice.

Appeal by the natural mother from orders of the District Court granting the petitions for adoption of two of her minor children. The facts in each adoption proceeding being the same except for minor differences relating to the children and the different adoptive parents, the two matters were consolidated for appeal to this court.

On August 31, 1950, appellant and her then husband, the father of the children involved herein were deprived of the custody of their four children by an order of the Juvenile Court which found them unfit and improper persons to have the care, custody and control of their children. The children were committed to the Utah State Department of Public Welfare for supervision, treatment and foster home care under the continuing jurisdiction of the court and the father was ordered to pay $100 per month for their care. This he failed to do.

Appellant divorced the natural father a few months after their children were taken from them and then married her present husband and now has two children as the issue of this marriage. She has kept in touch with the judge of the Juvenile Court which deprived her of the custody of her children and has evinced an interest in all her children. When she heard rumors that some of her children were to be adopted she wrote to this judge and was assured that such proceedings could not take place for some time and that she should not worry and to continue in the rehabilitation of herself. When the Department of Public Welfare requested her to make payments for the support of her children upon the failure of the natural father to do so she caused her present husband to make such payments until she learned that the two children involved herein had been adopted without her knowledge or consent. Upon her taking legal action these adoptions were set aside and on

February 4, 1953, after notice to both the natural parents, hearings were held on the petition for the adoption of these two children. There is no question of the fitness of the adoptive parents or the desirability of the homes in which each child would be reared if allowed to remain with its adoptive parents. Our problem is whether the lower court's action in granting the adoption petitions can be sustained in the absence of the consent of the natural mother, the consent of the natural father having been obtained.

Sec. 78–30–4, U.C.A.1953 provides that:

"A legitimate child cannot be adopted without the consent of its parents, if living, * * * except that consent is not necessary from a father or mother who has been judicially deprived of the custody of the child on account of cruelty, neglect or desertion; * * *."

 The Juvenile Court having placed the children with the State Department of Public Welfare for "foster home care, treatment, and supervision" while requiring the father to pay for such care, the question to be determined is whether such action is a judicial deprivation of the custody of such children on account of cruelty, neglect or desertion within the meaning of the above section, so that the consent of the natural parents is not necessary in adoption proceedings. We think not. Once a child is adopted its ties to its natural parents, unlike in cases involving mere custody, is permanently severed. Such a result, without the consent of the legitimate, natural parents, has not been favored by courts, it being considered that the natural relationship between parents and child is of an enduring and sacred character. Adoption proceedings are statutory and based on consent. So where statutes dispense with the consent of a legitimate natural parent who for some misconduct has been deprived of the custody of his child, a strict construction is given such statutes in cases in which the natural parent contests the adoption. See In re Jackson, 55 Nev. 174, 28 P.2d 125, 91 A.L.R. 1381 and note thereto commencing on page 1387; Ronck v. Ronck, 203 Okl. 121, 218 P. 2d 902, and Onsrud v. Lehman, 56 N. M. 289, 243 P.2d 600. The above cases involved constructions of statutes which provided that the consent of a legitimate, natural parent was not necessary in an adoption proceeding where he is the guilty party in a divorce of the parents granted on grounds of cruelty or adultery. The above courts have construed such a provision to apply only where it was clear that the guilty parent had been absolutely and permanently deprived of the custody of the child so as to divest him of all rights to such child, such for instance as the right of visitation, although a literal construction of their statutes would have required a different result. A parent is just as permanently deprived of his natural relationship to his child when it is adopted when his consent is dispensed with for the reason that he has been judicially deprived of the custody of his child because of "cruelty, neglect or de-

sertion" as he is when his consent is dispensed with because of a divorce granted for cruelty or adultery in which he is the guilty party and the same reasons for a strict construction of such a provision should apply in the one case as in the other.

The determinative question here is: Did the Juvenile Court when it deprived the parents of the custody of their children for cruelty and neglect and placed them with the State Department of Welfare "for foster home care, treatment and supervision" under its continuing jurisdiction, divest them absolutely and permanently of all their rights to the children so as to make their consent unnecessary in adoption proceedings?

If the Juvenile Court had intended to permanently deprive the parents of the custody of their children it could have placed them with a children's aid society and appointed such society the guardian of such children under the provisions of Sec. 55–10–40, U.C.A.1953, and that society could, under the provisions of Sec. 55–10–43, have gotten the consent of the Juvenile Court to place the children for legal adoption into the homes procured for them by the society. This the Juvenile Court did not do. Instead it ordered the father to pay for the support and maintenance of his children while they were in the care of the State Department of Welfare. In letters to the mother, the court encouraged her to believe that when she rehabilitated herself and was capable of taking care of her children they would

be returned to her, by writing: "Of course, your future prospects and conduct will determine the results to the children." Such conduct by the court indicates it did not consider that its order depriving the parents of the custody of the children was permanent. That our statutes do not contemplate that every judicial deprivation of parents to the custody of their children is a permanent deprivation is borne out by Sec. 55–10–41, U.C.A.1953, which provides for proceedings to return the custody to the parents when circumstances have changed. Here the mother after she was deprived of the custody of her children showed a constant interest in them. When the State Welfare Board requested her to make the payments which the Juvenile Court had ordered her former husband and the father of the children to make, she caused her second husband to make such payments until she was informed of the adoption proceedings. Although the natural father gave his consent, she never did, but sought legal advice immediately for means to prevent the adoptions. Under such circumstances we are of the opinion that the Juvenile Court had not absolutely and permanently deprived the natural parents of the custody of their children and therefore the adoptions without the consent of the mother are invalid. What was said in Jain v. Priest, 30 Idaho 273, 164 P. 364, on page 369, by the Idaho Supreme Court in a case in which it appeared that the parents were deprived by the Juvenile Court of the custody of their children for neglect and the children were placed in a

children's home until the parents would reform and become fit to be entitled to the children again, might well be said under the facts of the instant case. The court there said:

"* * * When the statute says that the consent of the parents is unnecessary where they have been judicially deprived of the custody of their children on account of neglect, we construe it to mean cases where they have been finally and permanently deprived of such custody by a final, absolute, and unconditional judgment of the court. In view of the language used in the order of the probate judge for Shoshone county, and under all the facts of this case, we do not think that such order was a final and unconditional judgment, absolutely and permanently depriving the parents of the custody of their children. * * *"

Having decided that under the facts of this case that the parents were not "judicially deprived" of the custody of their children within the meaning of Sec. 78–30–4, U.C.A.1953, so as to dispense with the required consent of the parents, and the mother having refused her consent, it is unnecessary for us to determine whether the court erred in refusing to admit certain evidence dealing with the rehabilitation of the mother and her fitness to again have the custody of her children, because the court never obtained jurisdiction to exercise the power to grant the adoptions and

therefore any questions pertaining to the welfare or custody of the children was not before it in such a proceeding. See In re Cozza, 163 Cal. 514, 126 P. 161 and In re Adoption of Strauser, 65 Wyo. 98, 196 P. 2d 862. We do not decide here who may be entitled to the custody of the children. That question must be decided in another type of proceeding.

Reversed and remanded with instructions to set aside and annul the orders granting the petitions for adoption.

McDONOUGH and HENRIOD, JJ., and JONES, District Judge, concur.

CROCKETT, J., concurs in the result.

WOLFE, C. J., being disqualified does not participate herein.