323 P.2d 720

**Application for Writ of Habeas Corpus in Behalf of Marilyn JACOB, a minor child, Appellant,**

**v.**

**STATE of Utah By and Through the PUBLIC WELFARE COMMISSION et al., Respondent.**

No. 8703.

Supreme Court of Utah.

March 28, 1958.

Dean E. Flanders, Salt Lake City, for appellant.

E. R. Callister, Jr., Atty. Gen., McBroom & Hanni, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from the dismissal of a petition for a writ of habeas corpus filed in the District Court alleging illegal restraint of a female minor child. Affirmed, no costs awarded.

■ This matter was submitted on the record, which incorporated the evidence adduced at several hearings before the Juvenile Court, an affidavit of an agent of the Childrens Service Society, and briefs filed by the parties after motion to dismiss was made by defendants. The Juvenile Court found, on ample substantial evidence, that the child had been neglected and that her parents were unfit to have her control. It also adjudged that they be "deprived of the *permanent* custody of said child," that "all parental rights are *terminated*" and that "the care, control and custody of said minor child is placed with the * * * Department of Public Welfare, for *foster home placement*" and "*adoption.*"

In 1953, after a hearing, the child, then less than 2 years old was found by the Juvenile Court to be neglected and petitioners to be unfit to have her custody. They were deprived *temporarily* of custody and the child was placed in a foster home. In 1954 they petitioned for restoration of custody and the Juvenile Court granted the petition on a trial basis, retaining jurisdiction. In 1955 the child again was taken from petitioners and placed in a foster home. On February 2, 1956, on hearing duly had on petition and notice to petitioners, the child once more was adjudged neglected and petitioners *permanently* were deprived of her custody, their parental rights were *terminated* and the child was placed with the State Welfare Department for "foster home placement" and "adoption." On February 24th the court, on its own motion, ordered "nunc pro tunc" that the child be placed with the Childrens Service Society, a licensed agency. The child thereafter was adopted in another state by nonresidents.

Petitioners urge that 1) the nunc pro tunc order was void, 2) habeas corpus is a proper remedy where one is restrained under a void judgment, 3) the District Court may entertain jurisdiction where a local custodian has control of the minor, though the latter is beyond the jurisdiction and 4) the petition filed was not subject to formal attack. Since we are of the opinion the judgment was not void, only the first point need be canvassed since the others are predicated on the judgment's invalidity.

Basis for the assertion that the "nunc pro tunc" judgment was void, say petitioners, is the fact that the judgment of February 2nd nominated the Welfare De-

partment as custodian, such department having no statutory authority to place children for adoption. It is urged that such judgment being void a nunc pro tunc order could not validate it. Fallacy of the contention lies in the assumption that because the Welfare Department was ineligible to place the child for adoption, the whole judgment of February 2nd was void. Not so.

As a preliminary matter, it may be observed that where, on account of neglect, parents *permanently* are deprived of their child's custody, their parental rights are *terminated* and the child is placed for adoption (as distinguished from a case of temporary deprivation), consent of and notice to the parents of a proposed adoption are unnecessary, as is reflected in the opinion of Deveraux, Adoption v. Brown.[1] Such conclusion has found its counterpart statutorily, where, for example, title 78–30–4, Utah Code Annotated 1953, provides, inter alia, that when a parent has executed a release to a licensed child placement agency, the "court may order the adoption * * * without notice to or consent * * * of the parent," and wherein it is provided that if parents judicially have been deprived of their child's custody because of cruelty, *neglect* or desertion (as is the case here) "the district court may order the adoption * * * without notice" to the

parents. Neither is notice necessary under Title 55–10–42. That the parents' consent need not be obtained in cases where their parental rights judicially and permanently have been withdrawn, and that notice should not be required to be given them in such event before an adoption is perfected, find sanction in sound public policy. That policy is designed to prevent harrassment and possible extortion that might result if possibly unscrupulous natural parents, guilty of neglecting their child, gained knowledge of its whereabouts and that of its adoptive parents. That policy, directed against requiring such consent and notice, also is designed to allay the fears of prospective adoptive parents, and to encourage willing persons to give underprivileged children an opportunity in life, through adoption, that they otherwise would be denied,—without a constant fear that the affection that almost invariably comes with the adoption of a child will be fractured.

With these principles in mind, naming of the Welfare Department as custodian of the child at best would reflect a misdirected casting of that agency in the role of custodian, without rendering impotent the rest of the judgment or the authority therefor, which had to do with the really important aspects of the case, viz.: To declare the child neglected, its parents unfit, their parental rights divested and their custodia rights forfeit. To hold other-

1. 2 Utah 2d 30, 268 P.2d 995, rehearing 2 Utah 2d 334, 273 P.2d 185.

wise would do violence to any reasonable statutory construction and would emasculate the jurisdiction of the Juvenile Court by attaching undue significance to the appointment of a placement agent that could receive for placement but technically could not take custody for adoption.

■ That the Juvenile Court may modify its orders as to custody or other disposition of children properly under its jurisdiction because of delinquency, neglect or dependency, where parents permanently have been dispossessed of their rights in such children, seems undebatable.[2] We believe and hold that the order of February 24, entitled "nunc pro tunc," was a modification or correction of the February 2nd order that simply shifted the custody of the child from one agency to another pending final execution of the court's injunction that the child be adopted. Had the court named the Childrens Service Society as custodian in the first instance, no one could have complained. It is difficult to discern why the shifting of custody from an ineligible to an eligible agency should have the rather startling effect of rendering void an erstwhile valid decree declaring a child neglected, depriving its parents permanently of custody because of unfitness and ordering the child adopted, and thus undoing all that had been done to further the interests of this child, re-turning it to parents adjudged to have been unfit to have its custody, and who, presumably, would perpetuate the neglect which the court sought to terminate.

Petitioners complain that there was nothing in the record to indicate that the placement agency had filed a pre-adoption report with the Juvenile Court as contemplated by Title 55–10–43. By the same token there is nothing in the record to show that such report was *not* filed. No point was made as to such claimed failure, in the pleadings or any place else in the record, and no one urged the adduction of any evidence to prove or disprove the failure, which now is claimed for the first time on appeal. For aught we know the report called for may have been filed and may have gone along with the confidential papers protected against indiscriminate public scrutiny by Title 55–10–46, having to do with sealing of adoption files. Such report no doubt would have reflected the whereabouts of the child and the adoptive parents, and is the type of classified document that, if for no other reason, would not be annexed to the official file in this case, out of deference to the letter and spirit of Title 55–10–46, mentioned above. Without determining any jurisdictional question touching any hypothetical case of proven compliance or noncompliance with Title 55–10–46, we cannot but conclude

2. Title 55–10–31, Utah Code Annotated 1953; Stoker v. Gowans, 45 Utah 556, 147 P. 911; Deveraux' Adoption v. Brown, supra.

that under the record here and the circumstances of this case a presumption must be indulged that that which should have been done was done.

McDONOUGH, C. J., and WADE and WORTHEN, JJ., concur.

CROCKETT, Justice.

I concur, adding this comment: Whether a pre-adoption report under 55–10–43, U.C.A.1953, was filed or not seems immaterial here, inasmuch as it has no bearing on the legal rights or status of petitioners.