In re Michael Gene TANNER, Jr., a minor.

Appeal of STATE DIVISION OF FAMILY SERVICES.

No. 14174.

Supreme Court of Utah.

May 3, 1976.

---

5. See Anno: 15 A.L.A.3d 1317, 1321, Section 3.

6. At p. 179 of 94 Utah, at page 574 of 76 P.2d.

7. Rule 56(c), U.R.C.P.

Vernon B. Romney, Atty. Gen., Paul M. Tinker, Asst. Atty. Gen., Salt Lake City, for appellant.

Michael D. Shepard, of Salt Lake County Bar Legal Services, Salt Lake City, for minor.

CROCKETT, Justice:

The State Division of Family Services (herein called Family Services) appeals from an order of the juvenile court that it pay for corrective orthodontic treatment of Michael Gene Tanner, a minor. It contends: (1) that the juvenile court had no authority to enter the order, and (2) even if it did, Michael is ineligible to receive services.

Michael Tanner is a 16-year-old boy (born August 18, 1959) whose mother is dead and whose father has long since vanished from the scene. After it was determined that his parents had abandoned him, he was placed in the guardianship of Fam-

ily Services by order of the juvenile court on June 26, 1967. On July 31, 1971, upon the Division's motion, guardianship was placed with Mr. and Mrs. Melvin Edwards, in whose home Michael had been under foster care for a long time. Two years later, in July 1973, that guardianship was terminated and again given to Family Services; but Michael was still placed with the Edwards for foster care.

There is no dispute about the fact that Michael Tanner has a problem with his teeth which should be treated. It is described as: "severe protrusion of his upper incisors," i. e., what is sometimes referred to as "buck teeth." This causes no immediate hazard to his health. But there is the psychological problem which may affect his personality and adjustment in society; and also there is risk of the early loss of his teeth because of non-occlusion with his lower teeth. The proposed corrective treatment would take three to four years and cost between $800 and $1,500.

The matter of the failure of Family Services to accord him treatment for this condition was presented to the juvenile court by Attorney David Dolowitz, who had been appointed by the court to safeguard Michael's interest. Pursuant to a hearing on an order to show cause on June 2, 1975, the court ordered Family Services to provide the needed orthodontic services.

Family Services' argument that the juvenile court was without authority to make this order is based on the following restriction which the 1975 Appropriation Act places on its funds:

> . . . funds appropriated to the Division of Family Services may not be

expended for the purpose of support or other expense for a child placed in any institution, facility, home, school, or other setting or program, which is not licensed, regulated, or otherwise approved by the Division of Family Services pursuant to its regulations and policies.[1]

■■■■ The answer on behalf of the minor is that the authority of the juvenile court to make the order derives from the general grant of power under Section 55–10–77, U.C.A.1953, over dependent and neglected children without any limitation thereon. There is no doubt that Section 55–10–77(2)(a) gives the juvenile court jurisdiction over Michael who had been determined to be a neglected child.[2] This jurisdiction continued even after the Division was given guardianship, for a juvenile court retains jurisdiction over a neglected or dependent child until he reaches his majority;[3] and its power to inquire into and safeguard a child's welfare continues, regardless of the fact that a third party may be providing care.[4] This is consistent with the concept inherent in our law respecting children: that in a civilized society all children, even those without parents or a home, should be provided not only food, clothing and shelter, but other basic needs, including necessary medical and dental care.

When a child is without a home or parents this responsibility is imposed upon the Division of Family Services by Section 55–10–110, U.C.A.1953:

> (1) When legal custody of a child is vested by the court in an individual or agency other than his parents . . . the court may . . . inquire into the

---

1. S.L.U., 1975, Ch. 216, item 161.

2. This minor is both a neglected and dependent child. Sec. 55–10–64, U.C.A.1953, subsection (17), defines a neglected child as one " . . . whose parent . . . has abandoned him . . . ."; and subsection (18) defines a dependent child to include " . . . a child who is homeless . . . ." See the statement of policy in Sec. 55–10–63, U.C.A.1953: "It is the pur-

pose of this act to secure for each child coming before the juvenile court such care . . . as will serve his welfare and . . . assist him to develop in a responsible citizen . . . ."

3. *Jacob v. State*, 7 Utah 2d 304, 323 P.2d 720 (1958); *Stoker v. Gowans*, 45 Utah 556, 147 P. 911 (1915).

4. *In re Olson*, 111 Utah 365, 180 P.2d 210 (1947).

ability of the parents, a parent, or any other person who may be obligated, to support the child and to pay any other expenses of the child, including the expense of any medical, psychiatric, or psychological examination or treatment *provided under order of the court.*

\* \* \* \* \* \*

(3) If the court finds that the parents are unable to pay for full or partial support, and other expenses of the child and that no other provision for the payment of such support and expenses has been made, . . . *the division of family services shall be responsible for the payment* of such support and other expenses for the neglected, dependent, or delinquent child . . . .. [Emphasis added.]

Because of the duty thus imposed upon Family Services and also because, as his guardian, it stands in loco parentis to this minor [5] it has the responsibility of providing him with his necessities; and when there is a serious failure therein, the remedy is to resort to the court as was done here. In that regard, we are duly appreciative of the fact that the juvenile court, the same as any other court, should be reluctant to intrude into the affairs of or interfere with the actions of an administrative agency. Nevertheless, when there is some such serious neglect relating to basic necessities as to put the health and welfare of a minor in hazard, there must be some remedy; and as will be seen from the statutes referred to above, this is the special responsibility of the juvenile court. Moreover, when the juvenile court has made its determination through proper procedure, this court will accord its findings and judgment the traditional presumptions of verity; and will not disturb them unless the appellant has sustained its burden of showing that they are in error.[6]

One further matter merits attention: Family Services asserts that the minor has not exhausted his administrative remedies by asking for a formal hearing before it as permitted by Sections 55–15a–25 and 55–15b–18, U.C.A.1953. It is true that as a general rule he must do so before applying to a court for relief. Two comments are pertinent: First, it does not appear that this issue was raised before the juvenile court, in which instance we do not normally consider it on appeal.[7] Second, and more important, insofar as the justice of the cause is concerned: it appears that Mr. Dolowitz conferred and negotiated with the decision making officials of Family Services over a period of several months without being able to obtain the needed orthodontic services; and that only after it was clear that the efforts could not succeed did he resort to the court. It is a basic tenet of the law that one should not be required to do a useless thing.

In view of our conclusion as to the controlling issue in this case as set forth herein, we can see no useful purpose in discussing the respective contentions of the parties as to which provisions of the Federal Social Security Act have application to this. minor and the care he is seeking.[8] It is sufficient to say that this and other matters urged by Family Services have been considered and are deemed to be

---

5. *Sparks v. Hinckley,* 78 Utah 502, 5 P.2d 570 (1931); and see generally 39 Am.Jur.2d, Guardian & Ward, § 65.

6. *Foster v. Blake Heights Corp.,* 530 P.2d 815 (Utah 1974); *Hardy v. Hendrickson,* 27 Utah 2d 251, 495 P.2d 28 (1972).

7. *Hamilton v. Salt Lake County, etc.,* 15 Utah 2d 216, 390 P.2d 235 (1964).

8. Family Services argued that it was not clear whether Michael was claiming under Title IV (42 U.S.C. § 601, et seq.) or Title XIX (42 U.S.C. § 1396, et seq.), and that the juvenile court could not, therefore, order it to make the expenditure.

without sufficient merit to justify extending this decision, or to reverse the judgment.

Affirmed. No costs awarded.

ELLETT and MAUGHAN, JJ., concur.

TUCKETT, J., dissents.

HENRIOD, C. J., does not participate herein.