STATE of Utah in the Interest of K. K. H., a person under eighteen years of age.

No. 16562.

Supreme Court of Utah.

March 31, 1980.

Jackson Howard of Howard, Lewis & Peterson, Provo, for K. K. H.

Robert B. Hansen, Atty. Gen., Sharon Peacock, Asst. Atty. Gen., Salt Lake City, for respondent.

HALL, Justice:

K. K. H. appeals the adjudication of the Juvenile Court of Weber County that she was within its jurisdiction:[1] The Decree of the court was based upon a finding that K. K. H. caused the death of one Paul Wilson by operating a motor vehicle in a negligent manner, while under the influence of intoxicating liquor.[2]

This appeal basically consists of a challenge to the sufficiency of the evidence. Specifically, four points are raised: (1) that the findings of the Juvenile Court are not clothed with the presumption of verity, and that this Court must therefore review the record *de novo*; (2) that the evidence is insufficient to support the findings; (3) that the blood alcohol test result was erroneously received in evidence; and (4) that the said test was not reliable. The contentions raised are deemed to be without merit and the judgment below is affirmed.

The following facts are abstracted from the record: K. K. H., a girl of 17 years, transported herself and a friend, Juli, from Provo to Salt Lake City in her father's automobile. Enroute, they arranged the purchase of a six-pack of beer which they partially consumed. Arriving at State Street in Salt Lake City, they encountered three boys who purchased them more beer. One of the boys, Paul Wilson, got in the automobile with K. K. H., and Juli got in the truck with the other two boys, and they proceeded to a rest room. Thereafter, Wilson persuaded the girls to drive him to Ogden (the three of them sitting abreast on the automobile's two bucket seats). They drove on through Ogden to a cabin of a friend of Wilson's in Ogden Canyon. They found no one there, and then, admittedly lightheaded and having to concentrate to drive, K. K. H. drove them to the Hermitage Inn, and again used the rest room. She then drove back to the cabin, remembered walking down stairs, but remembered nothing thereafter. Her explanation was that she must have fainted. Some time later, on the way down the canyon, the automobile collided rather head-on with an off-road abutment. Wilson sustained massive head injuries and was killed; K. K. H. suffered lacerations, a contusion to her shoulder and a broken right leg; and Juli suffered head and chest injuries. The first persons on the scene of the accident removed K. K. H. from the driver's side of the automobile and identified her as the driver. The investigating officers removed Juli from her position midway between the bucket seats, one buttock on one seat and one on the other. The automobile was extensively damaged in the front end and the steering wheel was considerably deformed. At the hospital, K. K. H. admitted that she was the driver and a test of her blood reflected a blood alcohol content of 0.12%.[3] Neither K. K. H. nor Juli claim to have any

---

1. Proceeding authorized by U.C.A., 1953, 78-3a-16.

2. Designated by U.C.A., 1953, 76-5-207 as the offense of Automobile Homicide and punishable as a felony if committed by an adult.

3. U.C.A., 1953, 41-6-44 establishes 0.08% or more by weight of alcohol in the blood as a

recollection as to who was driving at the time of the accident, but in any event, there is no contention that it was Wilson and the physical evidence supports the conclusion that he was not. However, K. K. H. theorized that Juli was the driver, contending that her chest injuries were only consistent with a driver impacting upon the steering wheel of the automobile. On the other hand, the theory adopted by the court below was that K. K. H. drove, Juli sat in the middle, and Wilson sat on the right side, just as they had been seated on the trip from Salt Lake City to Ogden.

In support of her initial contention that this Court must review the record *de novo* K. K. H. cites cases decided by three of our sister states,[4] but in doing so ignores the Utah statutory law on the matter. U.C.A., 1953, 78–3a–51 provides in pertinent part as follows:

> An appeal to the Supreme Court may be taken from any order, decree, or judgment of the juvenile court. *Such appeal shall be taken in the same manner in which appeals are taken from judgments or decrees of the district courts.* [Emphasis added.]

 The Constitution of Utah [5] governs appeals from the district courts and provides that they are to be upon the record made in the court below. In cases at law, the appeal is limited to questions of law only, while in equity cases, the appeal may be on questions of law and fact.

 Consistent with the aforementioned statutory and constitutional provisions, the decisional law of Utah has firmly established the standard of appellate review in equity cases. That standard is aptly stated in *Del Porto v. Nicolo,*[6] as follows:

> It is true, as plaintiff asserts, that this action . . . is one in equity upon which this court has both the prerogative

and the duty to review and weigh the evidence, and to determine the facts. However, in the practical application of that rule it is well established in our decisional law that due to the advantaged position of the trial court, in close proximity to the parties and the witnesses, there is indulged a presumption of correctness of his findings and judgment, with the burden upon the appellant to show they were in error; and where the evidence is in conflict, we do not upset his findings merely because we may have reviewed the matter differently, but do so only if evidence clearly preponderates against them. [Citations omitted.]

and in *Hatch v. Bastian,*[7] as follows:

> Even though we may review the evidence, the proposition is well grounded in our law that due to the advantaged position of the trial court, we indulge considerable deference to his findings and do not interfere with them unless the evidence so clearly preponderates against them that this court is convinced that a manifest injustice has been done. [Citation omitted.] On the basis of what has been said above concerning the dispute in the evidence and the burdens of proof, we are not persuaded that the findings and judgment should be overturned.

Specifically in regard to the review on appeal of the equitable proceedings before the juvenile court, in *State In Interest of K____ B____,*[8] this Court stated the matter as follows:

> . . . [I]t is well to have in mind the basic rules applicable to this review. The statute provides that appeals from the juvenile court shall be, "in the same manner . . . as . . . appeals from judgments . . . of the district court . . . ." Hearings in the juve-

---

presumption of being under the influence of intoxicants.

4. *Matter of Kent*, 31 Or.App. 1219, 572 P.2d 1059 (1977); *Templeton v. State*, 202 Kan. 89, 447 P.2d 158 (1968); and *In Re Hans*, 174 Neb. 612, 119 N.W.2d 72 (1963).

5. Article VIII, Section 9.

6. 27 Utah 2d 286, 495 P.2d 811 (1972).

7. Utah, 567 P.2d 1100 (1977).

8. 7 Utah 2d 398, 326 P.2d 395 (1958).

nile court involving questions as to the custody of children are equitable. Due to the extreme concern of courts for the welfare of children, proceedings in their interest are sometimes stated to be equitable in the highest degree, because the most careful consideration will be given such matters. In equity proceedings we are charged with the responsibility of reviewing the evidence; and it is the established rule that we will not disturb the findings and determination made unless they are clearly against the weight of the evidence, or the court has abused its discretion. [Citations omitted.]

Also, in *In Re Tanner*,[9] it was stated:

. . . [W]hen the juvenile court has made its determination through proper procedure, this court will accord its findings and judgment the traditional presumptions of verity; and will not disturb them unless the appellant has sustained its burden of showing that they are in error. [Citation omitted.]

K. K. H. makes an attempt to distinguish *Tanner*,[10] and although able to do so on its *facts*, Tanner is not distinguishable on the point of *law* which it espouses, and which is controlling.

■ In regard to the second point on appeal, that of the sufficiency of the evidence, the rule is as was stated in *State in the Interest of R. G. B.*:[11]

It is the prerogative of the jury to judge the weight of the evidence, the credibility of the witnesses, and the facts to be found therefrom. For a defendant to prevail upon a challenge to the sufficiency of the evidence to sustain his conviction, it must appear that viewing the evidence and all inferences that may reasonably be drawn therefrom, in the light most favorable to the verdict of the jury, reasonable minds could not believe him guilty beyond a reasonable doubt. To set aside a verdict it must appear that the evidence was so inconclusive or unsatis-

factory that reasonable minds acting fairly must have entertained reasonable doubt that defendant committed the crime. Unless the evidence compels such conclusion as a matter of law, the verdict must be sustained.

The foregoing rule is the same whether a judge or jury sits as the fact-finder, and its application in the instant case obligates us to view the facts in the light most favorable to the ruling below. In so doing, it is seen that K. K. H.'s contentions do not compel the conclusion that reasonable minds could not believe her to have been the driver of the automobile.

■ The record contains substantial, credible evidence, coupled with the admission of K. K. H., that she was driving the automobile. This is so, although the record also reflects the various theories of innocence advanced by K. K. H., the principal one being that her lack of chest injuries was wholly inconsistent with having been the driver, while Juli's chest injuries were only consistent with having been the driver impacting with the steering wheel and causing it to deform. This theory is obviously fraught with frailties, not the least of which is that its adoption requires considerable speculation on the part of the fact-finder.

■ In any event, it was the function of the court below to evaluate the theories advanced by K. K. H. and to test them in the light of all of the evidence, and it is not within the prerogative of this Court to substitute its judgment for that of the trial court where, as here, it is substantially supported by the evidence.

The last two points raised on appeal have to do with the admissibility and reliability of the blood alcohol test of K. K. H.'s blood, and we therefore address them together.

■ We observe at the outset that there is substantial evidence in the record, independent of the blood alcohol test, to support

9. Utah, 549 P.2d 703 (1976).

10. Id.

11. Utah, 597 P.2d 1333 (1979), quoting *State v. Mills*, Utah, 530 P.2d 1272 (1975).

the finding below that K. K. H. was intoxicated. Furthermore, K. K. H. concedes on this appeal that she was intoxicated. She also contends that she "fainted" and thus implies that she could not have been driving at the time of the accident. Thus it is seen that evidence of the alcohol content of her blood was only cumulative and, hence, even if erroneously admitted in evidence, it would not constitute reversible error.[12]

■ Irrespective of the foregoing observations, K. K. H. contends (1) that she did not consent to the blood alcohol test, and (2) that in any event, she was incapable of consenting or refusing. We are unpersuaded by either argument for the reason that *actual* consent is unnecessary in the taking of a blood sample under such circumstances.[13] If K. K. H. was in fact incapable of consenting or refusing, the Utah statute nevertheless permits the taking of a blood sample by one so authorized.[14] It necessarily follows that the blood alcohol test result was admissible in evidence and that the court did not err in so ruling.

■ K. K. H.'s assertion that the test result is unreliable is based upon a contention that the accuracy of such a test need be corroborated by an additional test, and cites the following language from the Washington case of *State v. Baker*[15] as supportive of that proposition: " . . . that the test be given by a qualified operator and in the proper manner."

We deem the reliance upon *Baker* to be faulty for two reasons. First, the foregoing language therefrom does not represent a standard other than was followed in the instant case. This is so, for it is undisputed that the operator was in all respects qualified and that all required testing procedures were followed. Secondly, our own analysis of *Baker* convinces us that it does not extend the standard further so as to require

the performance of a series of confirming tests.

We accord the traditional presumption of verity to the proceedings of the Juvenile Court below and thereby affirm its Decree.

CROCKETT, C. J., and WILKINS, J., concur.

MAUGHAN, Justice (dissenting):

For the following reasons, I dissent. The difficulty in reviewing the proceedings of the Juvenile Court in this case involves the failure of that court to adhere to our law,[1] which requires " . . . the court shall find the facts specially and state separately its conclusions of law thereon, . . . " Rule 52(a), U.R.C.P. This Court has previously admonished the Juvenile Court the law requires written findings and conclusions of law to support an adjudication.[2]

The only written findings in the record provide as follows:

"Findings And Conclusions: The court finds the petition of December 29, 1978, to be true. That said child comes within Section 16 of the Utah Juvenile Court Act of 1965."

The petition alleged:

"On or about the 28th day of October, 1978, K. H. did, while under the influence of intoxicating liquor, a controlled substance, or any drug, cause the death of Paul Wilson by operating a motor vehicle in a negligent manner."

Concededly the court orally discussed his findings as indicated in approximately 3½ pages of the trial transcript. However, the quality of the transcript reflects the necessity for written findings. For example, the record indicates the Court stated: " . . . I feel that physical evidence of the, even the damage of, the injury to the driver, even though of a questionable na-

---

12. Rule 61, Utah Rules of Civil Procedure.

13. U.C.A., 1953, 41–6–44.10(a) implies consent.

14. U.C.A., 1953, 41–6–44.10(c) permits the taking of blood from any person who is dead, unconscious, or in any other condition rendering him incapable of refusal to submit.

15. 56 Wash.2d 846, 355 P.2d 806 (1960).

1. 78–3a–39; 78–3a–44(1); Rule 52(a), U.R.C.P.

2. *State in the Interest of R.N.*, Utah, 527 P.2d 1356 (1974).

ture, was not such that I had a doubt that I could say would be reasonable doubt. And to that point, J. W., having also been seriously injured, still her injuries, in examining myself and all of the medical reports, although that typifying myself as a physician to that particular point, the testimony that I have received, Miss W., Miss W.'s injuries were still not *consistent* with placement of herself between the seats, between the driver and the deceased . . . ." [Emphasis supplied.]

By using the term "consistent" rather than the term "inconsistent" the court's finding had the effect of further substantiating K. K. H.'s claim that the evidence clearly established a reasonable doubt she was guilty of automobile homicide. One of the vigorously contested issues of this case was whether K. K. H. was the driver of the vehicle. One police officer testified the warped condition of the steering wheel was caused by the forces of the body, and the body would suffer similar injuries. Another police officer testified as to the dynamics of the accident as reflected in the physical evidence; the driver would be thrown to the right and go forward; he surmised the driver would hit the steering wheel on the right hand side and go towards the middle of the vehicle. An officer testified J. W. was observed by him with the left part of her body on the driver's seat and part of her buttock's resting against but not on the passenger's seat. Three witnesses who arrived on the accident scene described J. W. as being slumped over the steering wheel, in the vicinity of the driver's seat. J. W. had serious chest injuries; K. K. H. had none. Thus, the oral finding of the court [although possibly a mistranscription or slip of the tongue] that J. W.'s injuries were not consistent with the position between the two front seats, as claimed by the prosecution, further verifies K. K. H.'s claim.

During the adjudicatory stage of a delinquency proceeding in the Juvenile Court,

the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged.[3] K. K. H. urges that the State has not sustained this burden of proof. K. K. H. contends the evidence against her was almost completely circumstantial[4] that she was driving the car at the time of the accident. She cites the rule, viz., where the only evidence pointing to an accused's guilt is circumstantial, to warrant conviction the evidence must exclude every reasonable hypothesis other than the accused's guilt.[5]

In *State v. Schad*,[6] this Court stated: " . . . where a conviction is based on circumstantial evidence, the evidence should be looked upon with caution, and that it must exclude every reasonable hypothesis except the guilt of defendant. This is entirely logical, because if the jury believes that there is a reasonable hypothesis in the evidence consistent with the defendant's innocence, there would naturally be a reasonable doubt as to his guilt. Nevertheless, that proposition does not apply to each circumstance separately, but is a matter within the prerogative of the jury to determine from all of the facts and circumstances shown; and if therefrom they are convinced beyond a reasonable doubt of the defendant's guilt, it necessarily follows that they regarded the evidence as excluding every other reasonable hypothesis. Unless upon our review of the evidence, and the reasonable inferences fairly to be deduced therefrom, it appears that there is no reasonable basis therein for such a conclusion, we should not overturn the verdict."

In *State v. Burch*[7] this Court explained: " . . . Where the alleged offense and the accused's alleged connection

---

3. *In Re Winship*, 397 U.S. 358, 368, 90 S.Ct. 1068, 1074, 25 L.Ed.2d 368 (1970).

4. There is in evidence an admission that K. H. first denied and then admitted to the arresting officer in the hospital that she was driving. The officer conceded that she was in a state of

shock, and was emotionally disturbed and frightened.

5. *State v. John*, Utah, 586 P.2d 410 (1978).

6. 24 Utah 2d 255, 257, 470 P.2d 246, 247 (1970).

7. 100 Utah 414, 419, 115 P.2d 911, 913 (1941).

therewith rest wholly upon circumstantial evidence, which evidence, as a matter of law, is reasonably consistent with the innocence of the accused, then this court must hold that there is not substantial evidence to support the guilt of the accused. . . . "

The physical evidence of the damages to the vehicle and the injuries sustained by K. K. H. and J. W. and the testimony interpreting this evidence by the investigating officers and the medical expert constitute a reasonable view of substantial, credible evidence which is reconcilable with defendant's innocence, as a consequence there would be a reasonable doubt as to K. K. H.'s guilt.[8]

The term "hypothesis" is defined as "a proposition tentatively assumed in order to draw out its logical or empirical consequences and so test its accord with facts that are known or may be determined." [9]

The hypothesis urged by K. K. H. was that she was not the driver of the vehicle and was, in fact, in the back seat at the time of the collision. The injuries sustained by K. K. H. included a fractured right femur and a laceration to the anterior right knee. She also sustained a small contusion to her shoulder and small laceration above her eye; her chest was normal. J. W. sustained chest injuries, including broken ribs, and a fractured second vertebra in the neck. She had no head injuries except as she described a cut on her chin. J. W. had a broken left ankle, an injured right foot (no fractures), a fractured pelvis, lacerated buttocks, and fractured left hand.

The medical expert, Dr. Brian, an orthopedic surgeon, testified after observing the deformity of the steering wheel, he would expect fractures to the body from the impact. The doctor described the injuries he would expect a person in the passenger seat to sustain as injuries to the extremities, head lacerations, chest injuries, and multiple fractures to the face. For a person situated in the middle between the passenger and driver seat, he would expect leg and head trauma, multiple lacerations, contusions to face, and broken legs. The doctor further testified that the person in the driver's seat would sustain most of the chest injuries from the steering wheel. He conceded that a passenger can sustain chest injuries, but it is usually the face and legs which are injured as the person is thrown forward.

The investigating officer testified the main point of impact of the vehicle was the right front side. As noted ante, the dynamics of the accident would thrust the driver forward and to the right towards the middle of the vehicle.

From the foregoing it may be concluded K. K. H.'s hypothesis is in accord with these substantial and credible facts. Since this hypothesis is reconcilable with K. K. H.'s innocence, logically there is a reasonable doubt as to her guilt and the conviction cannot be sustained.

There is another aspect concerning evidentiary insufficiency on the face of the record; the Juvenile Court concluded K. K. H. had committed automobile homicide by an act of simple negligence. The court in its oral findings stated:

. . . Now, the question is simple negligence. There was an accident, collision with a wall along the Ogden River. The vehicle did leave the road for some distance, did collide with the, with the wall. The death of the passenger was caused by that particular accident. . .

The only evidence in the record concerning the facts leading to impact was testimony that the tracks of the two right tires of the vehicle could be observed in the area beyond the white line marking the right edge of the lane for a distance of 68 feet 9 inches prior to impact. These tracks did not indicate any evidence of evasive action. It should be observed that a vehicle traveling 25 miles per hour moves at the rate of

8. See State v. John, note 5 supra, p. 412 of 586 P.2d.

9. Webster's Third New International Dictionary.

36.6 feet per second and one traveling 30 miles per hour at the rate of 44 feet per second. There is nothing in the record to indicate the speed of the vehicle, but if the vehicle had been traveling at the speed of 25 miles per hour, it would have collided with the wall in less than two seconds after the right tires commenced rolling over the area beyond the white line at the edge of the road. The Juvenile Court found that K. K. H. was under the influence of alcohol with a consequent impairment to her coordination and perception. These were the facts to support the court's finding of simple negligence; the sufficiency of which there need be no comment in light of *State v. Chavez.*

In the recent decision of *State v. Chavez,* Utah, 605 P.2d 1226 (1979) this Court ruled negligence is an element of the crime of automobile homicide under Section 76–5–207(1), and such negligence must at least rise to the level of criminal negligence as defined in Section 76–2–103(4) or defendant is guilty of no offense at all. Under the doctrine of manifest error, we must acknowledge one of the elements (criminal negligence) of automobile homicide has not been proven and the finding of the Juvenile Court cannot be sustained. This cause should be reversed and remanded to the Juvenile Court with an order to dismiss the petition.

STEWART, Justice (concurring in Justice MAUGHAN'S dissent in part):

Although the issue was not raised on appeal, the failure of the juvenile court to make adequate findings of fact and conclusions of law presents an issue which should properly be addressed sua sponte by this Court. The juvenile court entered only the most conclusionary findings as to the ultimate legal issues. It is axiomatic that this Court is not in the business of reviewing evidence, especially when the credibility of witnesses is at stake. The juvenile court clearly has an undeniable advantage in assessing the evidence in this case, and this Court ought not attempt a reassessment from our disadvantaged position. Furthermore, it is not possible for this Court to fulfill its proper appellate function unless Rule 52(a) of the Utah Rules of Civil Procedure, which requires findings of fact and conclusions of law, is complied with. The requirement that a trial court make findings of fact and conclusions of law relates directly to the integrity and proper functioning of the judicial system, at both the trial and the appellate levels. Accordingly, I concur in the dissenting opinion of Justice Maughan to the extent that he would hold that the juvenile court should have made appropriate subordinate findings of fact.

However, I do not concur with Justice Maughan in deciding that the burden of proving the acts alleged beyond a reasonable doubt cannot be sustained. That is a question for the juvenile court after entry of detailed findings and the application of controlling legal principles.